DICKSON vs. THE CITY OF RACINE.

*November 12 — November 25, 1884.*

*Municipal corporations — Taxation — Assessment of special benefits — Determination of taxing district when final — Appeal.*

The charter of the city of Racine provides that upon the opening of a street by the common council special commissioners shall be appointed who shall assess all benefits and damages accruing therefrom upon the particular lots or parcels which will be benefited thereby and report such assessment to the council for confirmation. It further gives all parties interested the right to be heard at any stage of the proceedings and the right to appeal from the assessment after its confirmation. *Held,* that the determination of the commissioners' as to what property will be benefited, when confirmed by the council, is final, and upon an appeal the only question is whether the assessment upon the appellant's property is its proper proportion of the whole assessment. *Teegarden v. Racine,* 56 Wis. 545.

APPEAL from the Circuit Court for *Racine* County.

The following statement of the case was prepared by Mr. Justice TAYLOR, as a part of the opinion:

This appeal arises out of a proceeding taken by the city of *Racine* to open a street in said city, and for the assessment of benefits and damages resulting from the opening thereof. The respondent owned a parcel of land, with a building situate thereon, fronting on Main street in said city, and being parts of lots 5 and 6, block 12, in the First ward of *Racine.* The street opened by said city, for which the assessments were made, extended from Main street to the river, at nearly a right angle with Main street, and nearly

two blocks north of the respondent's lot and building. It is shown that the main object of opening this new street from Main street to the river was to construct upon it a viaduct over the railroads in said city where they cross the street so opened, and it clearly appears that the opening of such street, and the construction of the viaduct, would be a public benefit, and also a special benefit to the property of the plaintiff. It is admitted that the proper proceedings were taken for the opening of said street, and for the assessment of damages and benefits under the provisions of title V, ch. 313, Laws of 1876, which is the charter of said city; and that the commissioners appointed under the provisions of sec. 8 of title V of said ch. 313, assessed as benefits upon the respondent's lot on Main street, $147, and that such assessment was confirmed by the common council of said city as provided by said sec. 8.

The respondent appealed from the assessment made upon his lot to the circuit court of said county of Racine, in the manner prescribed by sec. 12 of title V of said ch. 313. The appeal was tried in said circuit court, and upon such appeal the following questions were submitted to the jury: 1. "Was the south one third of lot 5, block 12, in the First ward, charged with its proper proportion of the assessment for benefits for the extension of State street, in the First ward of the city of *Racine?*" 2. "If to the above question you answer 'no,' state what sum should be assessed against it." The same questions were submitted as to the other part of the respondent's lot. Upon the trial in the circuit court the respondent was permitted to give evidence, notwithstanding the objection of appellant, as to the fact whether the respondent's property on Main street was in fact benefited by the opening of said street.

At the close of the evidence offered the counsel for the city requested the circuit judge to instruct the jury as follows: "It has been decided, by special commissioners ap-

pointed for the purpose, that property within certain limits has been specially benefited by the extension of State street, in the First ward. The decision of the commissioners as to this fact, and as to the aggregate amount of benefits to property within the limits so fixed, is final. The property of the plaintiff is within these limits, and must therefore bear its proportion of the benefits. The only question for you is the proper proportion of the plaintiff's assessment. This is not necessarily measured by the quantity of land or the value of the land owned by the plaintiff, as compared with other property assessed. The location may be such as to increase the benefits to it from the opening of the street. Different amounts may be assessed on different pieces of land of the same quantity and value, if its situation is such as to render the benefits to it greater than to other property differently situated; but there must be no discrimination against the plaintiff, nor in his favor. If there has been no such discrimination, and the charges against the plaintiff's property are in proper proportion to the other property assessed, your verdict must be for the defendant. You cannot increase or reduce the amount of this assessment except for the purpose of making it proportionate to the other assessment."

The court refused to give the instructions and an exception was duly taken, and thereupon the court instructed the jury to answer the first question submitted to them, in the negative, and the second, by "six cents." To this direction exception was also taken. From the judgment entered on the verdict the city appealed.

*Edwin White Moore*, of counsel, for the appellant.

For the respondent there was a brief by *Fish & Dodge*, and oral argument by *Mr. Fish*.

TAYLOR, J. After reading the testimony contained in the bill of exceptions we are inclined to think the court erred in

directing a verdict in favor of the respondent, even upon the theory upon which the case was tried in the circuit court; but, however that may be, we are clearly of the opinion that the court erred in submitting the questions to the jury upon the theory that only the actual benefits to his land accruing from the opening of the street could be lawfully assessed thereon, and refusing to give the instructions requested by the counsel for the city. This case comes within the rule laid down in the case of *Teegarden v. Racine*, 56 Wis. 545. The proceedings in the case at bar are taken under a statute which is in all respects substantially like that under which the proceedings were taken in *Teegarden v. Racine*, and it was there held, after a careful consideration of the case, that upon an appeal by a land-owner from an assessment for benefits the action of the common council was conclusive upon the question as to what property was benefited and hence should be assessed; but that its decision as to the proper portion of the whole assessment to be borne by each lot might be reviewed on the appeal. In that case Justice CASSODAY says: "The trial court restricted all inquiry to the simple question whether the appellant's lands would be benefited by the proposed improvement, and, if so, in what amount. This restriction excluded from the jury the question whether any other lands were included in the assessment, and, if so, whether the appellant's lands were charged with any more than their proportionate share of the amount of the whole assessment. Such exclusion can be justified only on the theory that each lot or parcel of land included in the assessment is to pay just the amount of its increased value by reason of the improvement, regardless of the question whether the aggregate amount of the whole assessment is equal to the amount of the cost of the proposed improvement, or far above or much below it. . . . Of course, the common council was required to determine what property would be benefited, and hence what property should be

assessed. To that extent we are inclined to think that in the absence of fraud, or intentional or unjust discrimination, the action of the common council must be deemed conclusive."

The only difference between the case just cited and the one at bar is that in the *Teegarden Case* the common council, in the first instance, determined upon what property the cost of the improvement should be assessed, and in the case at bar that fact was to be determined in the first place by three commissioners to be appointed for that purpose; but their action is to be reported to the council for their approval, and sec. 11 of title V of ch. 313, Laws of 1876, provides that all parties interested may be heard as well before the common council as before the commissioners, and they are, by sec. 12, allowed twenty days to appeal after the confirmation of the acts of the commissioners by the common council. We see nothing in this case, or in the arguments of counsel, which should induce us to overrule the case of *Teegarden v. Racine.* We think it is sustained by reason and authority, and that to hold differently would lead to endless confusion, and render it impossible to make a special assessment under the provisions of the charter which could be enforced with any degree of certainty.

Dillon, in his work on Municipal Corporations, sec.596, says: "The many cases which have been decided fully establish the general proposition that a charter or statute authorizing the municipal authorities to open or establish streets, or to make local improvements of the character above mentioned, and to assess the expense upon the property, which, in the opinion of the designated tribunal or officers, shall be benefited by the improvement, in proportion to the amount of such benefit, or upon the abutters in proportion to benefits or frontage or superficial contents, is, in the absence of some special constitutional restriction, a valid exercise of the power of taxation." "Whether the expense of making such improvements shall be paid out of the gen-

eral treasury, or assessed upon the property benefited, or legislatively declared to be benefited, and, if in the latter mode, whether the assessment shall be upon all property found to be benefited, or alone upon the abutters, according to frontage or according to the area of lots, is in all cases a question of legislative expediency, unless there be some special restraining constitutional provision upon the subject." This court has held that there is no special restraining provision in our constitution upon the subject of local assessment. See *Weeks v. Milwaukee*, 10 Wis. 242; *Lumsden v. Cross*, id. 282; *Bond v. Kenosha*, 17 Wis. 284; *Johnson v. Milwaukee*, 40 Wis. 315.

Judge COOLEY, in his work on Taxation, page 449, says: " When benefits are assessed after this method, the district within which the tax shall be laid may be determined in either of two modes: (1) The legislative authority either of the state, or, when properly authorized, of the municipality, may determine over what territory the benefits are so far diffused as to render it proper to make all lands contribute to the cost; or (2) the assessors or commissioners, who, under the law, are to make the assessment, may have the whole matter submitted to their judgment, to assess such lands as in their opinion are specially benefited, and ought, therefore, to contribute to the cost of the work. . . ." On page 451 he adds: " Where the legislature prescribes no limits to the taxing district, but authorizes an assessment on such property as shall appear to be benefited, the report of the assessors or commissioners can alone determine what the district shall be. The subject is referred to them as a matter depending on judgment after actual inspection; but, as they only pass upon the question of fact, the district is to be considered as prescribed by the legislature, when the principle is settled which is to determine it."

In the case at bar, as in the *Teegarden Case*, the commissioners fix the taxing district by determining what lots shall

Dickson vs. The City of Racine.

be subject to special assessment; and when it is so deter-
mined, it is the same as though the legislature had fixed the
district and left it to the commissioners to assess that por-
tion of the cost of opening the streets which is to be raised
by special assessment, upon the property contained in such
assessment district in proportion to the benefits received by
each lot, upon the theory that the lots in the district are
legally chargeable with the amount of the assessment to be
made thereon; and, although an appeal is given to the land-
owner from the assessment as finally made to the circuit
court, it is clear to us that such appeal was not intended to
give the land-owner the power of changing the assessment
district by taking his particular property out of it. The as-
sessment district, as said by Judge COOLEY, when fixed, has
the same effect upon the land-owner as though fixed by the
legislature, and upon his appeal he can only question the
equality of the assessment as compared with the other as-
sessments in the district.

The circuit court erred in refusing the instructions re-
quested by the counsel for the city, as well as in his direction
to the jury to find a verdict which practically takes the
property of the respondent out of the assessment district as
fixed by the commissioners and affirmed by the common
council of the city.

*By the Court.*— The judgment of the circuit court is re-
versed, and the cause is remanded for a new trial.