Stone, Appellant, vs. Little Yellow Drainage District and others, Respondents.

*June 1—June 18, 1903.*

*Drains: Drainage district: Creation: Judicial proceedings: Jurisdiction: Collateral attack: Constitutional law: Due process of law: Taking property without compensation: Excess of the taxing power: Retroactive laws: Statutes: Construction: Additional assessments without notice: Prejudicial error.*

1. Under secs. 1379—11 to 1379—31, Stats. 1898, relative to the creation, etc., of drainage districts (providing for an application to the circuit court, by petition, for the creation of a drainage district, for notice to all persons likely to be affected, for the framing of issues and the trial thereof, with or without a jury, and for the rendition of decisions on various questions, and the entry of a so-called "order," having the characteristics of a decree, based on such facts as the court shall find in view of the law), the order creating the district is the culmination of an entirely judicial proceeding.

2. In an action to restrain the enforcement of an assessment levied for improvements in a drainage district, it appeared, among other things, that a petition, complying substantially with the statute, was filed, and that notice of hearing was served on plaintiff. *Held*, that jurisdiction over the plaintiff was complete; that a decision upon all the facts presented and construction of the law governing the situation, followed by a final order or decree in accordance with such decision and construction, was also within the jurisdiction of the court, and, a remedy by appeal being provided, the decision of the court is in no wise controverted by a showing that any facts were decided wrong, or that the law was misconstrued.

3. Before the entry of a decree creating a drainage district, plaintiff, in common with other property owners, received notice and had opportunity to appear in court, offer evidence, and have a trial on every material question:—whether a public purpose was to be subserved, whether the land would be specially benefited thereby, whether the benefits to the whole district would exceed the cost, as to the proportion of such cost which ought to fall on his lands, considered relatively to all other lands in the district,—and an opportunity to appeal to the highest tribunal in the state for a review of such decision. *Held*, that such proceedings did not deprive plaintiff of his property without due process of law.

4. Where a statute relative to the creation, etc., of drainage districts provided that before proceeding to assessment it must be found and decided that the benefits were equal or exceed the amount of the cost, and it appeared that such behest had been obeyed, there is no taking of property without compensation, nor excess of the taxing power as limited by the constitution.

5. An order creating a drainage district and providing for a tax to carry on the work was sought to be enjoined. It appeared, from the complaint, that such order was a judicial determination by a court having jurisdiction of the subject matter and the parties. *Held*, that such order could not be assailed collaterally in such action, except, perhaps, for fraud.

6. Sec. 2, ch. 43, Laws of 1901, modifying sec. 1379—18, Stats. 1898 (relating to the creation, etc., of drainage districts), provides that the order confirming the report of commissioners appointed to create a drainage district might "at the same or any subsequent term, . . . be reversed, modified or changed" after notice; also that the commissioners might be permitted to file supplemental report as to any matters properly within the field of the original order, and receive direction by order of the court thereon. *Held*, that the act of 1901, being aimed wholly at the procedure in the form of remedy created by statute to meet the necessity of draining a considerable district, authorized the court to modify existing orders of confirmation, and thus all drainage districts of the state are placed under continued judicial control, as to those subjects which might originally have been submitted for judicial determination by the report of the commissioners.

7. Said sec. 2, ch. 43, Laws of 1901, relating to mere matters of remedy and procedure, is not unconstitutional because retroactive in effect.

8. An order made under the provisions of sec. 2, ch. 43, Laws of 1901, modifying a final decree in proceedings to create, etc., a drainage district, being within the jurisdiction of the court, and it appearing that the plaintiff had and waived due opportunity to appeal therefrom, he cannot attack the order collaterally by an action to restrain the collection of any tax or assessment authorized by such modified order.

9. Under sec. 1379—24, Stats. 1898, as amended by sec. 6, ch. 43, Laws of 1901, relative to the establishment, etc., of drainage districts (providing that if in the first assessment the commissioners shall have reported to the court a smaller sum than is needed to complete the work or repair . . . a further assessment on the lands benefited, proportioned on the first, shall be made under the order of the court or the presiding judge

thereof without notice), a second assessment without notice is not unconstitutional as a taking of property without due process of law, since such order is but one step in a general scheme or procedure; must be considered in connection with the other parts, and hence notice, at any- stage of the proceedings, whereby the property owner has opportunity to be heard as to the apportionment of a share of the burden to him, is sufficient.

10. No error in such modifying order can prejudice the property owner, since the court by its first order has concluded every question upon which he had a right to be heard, and all that could be done by the court or the commissioners, is a mere arithmetical computation of the assessment, for which the presence of the property owner is not necessary.

APPEAL from an order of the circuit court for Juneau county: J. J. FRUIT, Circuit Judge. *Affirmed.*

Appeal from order sustaining demurrer to a complaint, from which it appears that in the spring of 1889 proceedings were instituted for the creation of a drainage district under secs. 1379—11 to 1379—31, Stats. 1898, and that, after due notice and appointment of commissioners in accordance with the statute and the necessary report of the commissioners, the court, on January 4, 1900, made its order of confirmation, in which were confirmed assessments so made that they did not become payable until from ten to twenty years in the future, but were to draw interest annually meanwhile, and by said order authorized the issue of bonds payable twenty years thereafter, and drawing interest not to exceed six per cent. After the enactment of the amendment to the sections above mentioned, accomplished by ch. 43, Laws of 1901, upon application by the commissioners and due notice, the court, on May 15, 1901, made an order modifying that of January 4, 1900; such modification being only in certain details, but continuing the theory of the original order, that the assessments should be payable in instalments between ten and twenty years thereafter, and that the bonds authorized should be payable in the same instalments. The amount of such original assessments was approximately $40,000, and the re-

port of the commissioners, confirmed by said orders, declared
that the benefits to the lands included in the district exceeded
the cost of the improvement. Later, on July 9, 1901, the
commissioners presented a petition declaring that an addi-
tional amount, exactly equal to the original estimate, to wit,
approximately $40,000, was necessary for the completion of
the work, and that they had assessed the same upon the same
basis as the former assessments. Thereupon, on July 18,
1901, without notice to any parties interested, the court en-
tered order confirming said second assessments, directing that
the same fall due in instalments at dates between ten and
twenty years thereafter, and draw interest at the rate of six
per cent., payable annually, and authorizing the commission-
ers to issue bonds bearing interest not to exceed that rate, and
payable in instalments of the same years as the assessments.
The complaint alleged these proceedings illegal and beyond
the jurisdiction of the court, and prayed injunction against
the drainage district and the commissioners, prohibiting them
from taking any steps to collect said assessments, and from
issuing said bonds under either of said orders.

J. T. Dithmar, for the appellant.

For the respondents there was a brief by Olin & Butler,
and oral argument by J. M. Olin.

DODGE, J.   There immediately present themselves upon
this complaint three questions, solution of which will render
ultimate conclusion easy, and obviate the necessity of ex-
amination of very much statutory detail, now become, in some
degree at least, obsolete. Those questions are: (1) Is the
proceeding under secs. 1379—11 to 1379—31, Stats. 1898,
a judicial one, so that it falls within sec. 2594, Stats. 1898?
(2) Had the circuit court jurisdiction thereof? (3) If both
the foregoing be answered in the affirmative, can the pres-
ent plaintiff attack or obstruct the decree collaterally?

To the first of these questions an affirmative answer is

*prima facie* indicated at once upon examination of the stat-
ute. The only suggestion to the contrary made by the plaint-
iff is that the laying out of drains and levying and collecting
special assessments for the expense thereof, is in its nature
either legislative or executive. Doubtless there are cases
where functions are thrown, or attempted so to be, upon
courts, which cannot be characterized as judicial, where they
are made mere implements of one of the other grand divisions
of the government; and such functions are sometimes per-
formed by courts without protest—whether properly so, we
need not now decide. Notable among such instances are those
where the mere appointment of some special commission or
tribunal is vested in a court or a judge. In the statutory
scheme now under consideration, however, we do not find any
such attempt. The sections above referred to provide for an
application to the court by petition for certain relief; for
notification to all others likely to be affected; for the framing
of issues and the trial thereof in an entirely judicial man-
ner by the court, with or without the aid of a jury; for the
rendition of decisions upon such various detail questions, and
the final entry of a so-called "order," having the character-
istics of a most comprehensive decree, based upon the facts
as the court shall decide them to be in the light of the law as
the court shall construe it. That such order or decree is the
culmination of an entirely judicial proceeding we cannot
doubt, nor that, as a corollary thereof, it may be enforced by
the court rendering it by any or all of those processes in-
herent in courts of justice. The view that this proceeding is
a judicial one has the support of intimations at least from
this court and from the courts of Illinois, whence in very
large measure, the statutes were adopted. *Bryant v. Robbins,*
70 Wis. 258, 271, 35 N. W. 545; *Muskego v. Drainage
Comm'rs,* 78 Wis. 40, 47, 47 N. W. 11; *Riebling v. People,*
145 Ill. 120, 124, 33 N. E. 1090.

That jurisdiction generally over the subject-matter is at-

tempted to be conferred by these statutes cannot be doubted. That such jurisdiction was aroused by the filing of a petition complying at least substantially with those statutes is made plain by the record as set forth in the complaint, and from the same record it is apparent that notice in compliance with that statute was served upon the various persons interested—certainly upon the plaintiff here. Thence results complete jurisdiction of the persons so served. From all these it results by primary legal logic that a decision upon all the facts presented and upon a construction of the law governing the situation, followed by rendition of a final order or decree in accordance with such decision and construction, was also within the jurisdiction of the court. Such conclusion is in no wise controverted by a showing that any facts were decided wrong, or that the law was misconstrued. A remedy deemed by the legislators complete for the correction of any such errors existed in an appeal from the final order. *Tallman v. McCarty,* 11 Wis. 401; *Salisbury v. Chadbourne,* 45 Wis. 74; *State ex rel. Milwaukee v. Ludwig,* 106 Wis. 226, 233, 82 N. W. 158.

This view disposes of the contention that the statutes did not, at the time of the original decree, in 1900, permit that the assessments be made payable in the remote future, or that money be borrowed, as here, for a considerable term, to be ultimately repaid out of such postponed assessments. We need not consider whether the statutes could properly be so construed as to authorize these things. If the court having jurisdiction did so construe them, it was a judicial act, none the less binding upon the parties because the construction was wrong.

Appellant, however, urges that the statutes attempting to confer this jurisdiction are void because they accomplish results forbidden by constitutional provisions, either federal or state, namely, that they deprive him of his property without due process of law, and that they make upon him imposi-

tions by special assessments not limited to the amount of his benefits. We think such objections untenable, because no such results are authorized by the statute or accomplished by the proceeding. Clearly, the first of these wrongs does not appear. Due process of law, in the constitutional sense, is satisfied by the giving of notice to the party of a proceeding in which his rights may be affected, together with an opportunity to appear therein and be heard. It is needless to go into the authorities to ascertain how slight a notice or opportunity will satisfy these requirements. Those granted by these statutes and actually conferred in the proceedings are of the fullest and most ample. Before rendition of the decree, plaintiff, in common with other property owners, received two notices and had opportunity to appear in court, offer evidence, and have tried every material question: First, whether a public purpose was to be subserved by the proposed drainage; secondly, whether his land would be specially benefited thereby; thirdly, whether such benefits to the whole drainage district would exceed the cost; and, fourthly, as to the proportion of such cost which ought to fall on his land, considered relatively to all other lands in the district. And in addition to all this he was given opportunity to appeal to the highest judicial tribunal in the state for a review of the decision of the circuit court upon any of these questions. This constituted such ample and complete process of law that the niceties of distinction in that field are not raised for consideration. *Hagar v. Reclamation Dist.* 111 U. S. 701, 4 Sup. Ct. 663; *Baldwin v. Ely,* 66 Wis. 171, 188, 28 N. W. 392.

Neither is there need to consider whether the cost of this work can constitutionally be imposed upon the private property within the drainage district, regardless of actual benefits conferred upon such property, for the statute makes no such attempt. It requires that, before proceeding to assessment, it must be found and decided that such benefits will equal or exceed the amount of the cost, and that behest has

been obeyed. There is therefore no taking of property without compensation, nor excess of the taxing power as limited by the constitution. *Weeks v. Milwaukee,* 10 Wis. 242; *Bond v. Kenosha,* 17 Wis. 284; *Dickson v. Racine,* 61 Wis. 545, 21 N. W. 620.

Having thus reached the conclusion that the order, execution of which is sought to be restrained, is a judicial determination by a court having jurisdiction of the subject-matter and of the parties, we hardly need to state that it cannot be assailed collaterally, except, perhaps, for fraud, of which nothing appears. *Salisbury v. Chadbourne,* 45 Wis. 74; *Crowns v. Forest L. Co.* 102 Wis. 97, 78 N. W. 433; *Crist v. Davidson,* 116 Wis. 532, 93 N. W. 532. This salutary rule of general law is re-enforced in its application to the present complaint by sec. 7, ch. 43, Laws of 1901, which prohibits any action to restrain collection of drainage assessments, except the appeal from the order authorizing them, accorded by the same statute.

From the foregoing it must result that the plaintiff could not maintain an action to enjoin either the collection of assessments or the issue of bonds in accordance with the final order made January 4, 1900. But it does appear by the complaint, as appellant urges, that the threatened action by the commissioners is not in exact compliance with that order, but with a modification thereof made by another order, dated April 15, 1901. The difference between the two, however, is slight. Under the first the bonds were to run twenty years, and the assessments were to be payable, one tenth on January 4, 1900, and another tenth annually thereafter. They were to draw no interest until they were so payable, but the amount of the interest on the bonds equaling the assessments in amount was to be levied each year. Under the modifying order, bonds were to fall due, one tenth thereof June 1, 1910, and a like amount annually thereafter. The special assessment was still divided into ten instalments, with annual maturity com-

mencing September 1, 1909, and were to draw interest from the date of the order, April 15, 1901. The order of 1900, being, as we have already said, a final judicial determination, would probably have been beyond the control of the trial court after the expiration of the term at which it was entered; but sec. 2, ch. 43, Laws of 1901, modified sec. 1379—18, Stats. 1898, by providing that the order of confirmation might, "at the same or any subsequent term, . . . be revised, modified, or changed" after notice; also that the commissioners might be permitted to file supplemental report as to any matters properly within the field of the original, and receive direction by order of court thereon. This modification of the statute, if applicable to orders made prior to its enactment, would undoubtedly authorize the slight modifications made by the order of April, 1901. The appellant, however, invokes the rule that statutes should not be read retrospectively, but as merely authorizing modification and amendment of orders thereafter to be entered in drainage proceedings. Doubtless there is a strong presumption against a retrospective purpose in legislation which relates to concrete rights of property. That presumption is, however, very much weaker in the case of statutes merely regulating remedies. That subject was discussed, and authorities collected, in *State ex rel. Davis & S. L. Co. v. Pors,* 107 Wis. 420, 83 N. W. 706. It is obvious that ch. 43, Laws of 1901, is aimed almost wholly at the procedure in the form of remedy created by statute to meet the necessity of draining a considerable district of land. It is an amendment simply of the details of various sections, comprising the general scheme of procedure for effectuating that purpose. It recognizes, among other things, that, as the work progresses, new conditions and circumstances may arise to modify the policy which at first might have seemed advisable, and that, even after the principal work shall have been completed, its highest efficacy may be capable of accomplishment only by some modification or

extension not within the strict limits of the original report
and final order.    These drainage districts throughout the
state, evidently contemplated by this scheme of legislation,
are not institutions of a day, but of much permanence and of
much importance to the welfare of the state, and to parties
whose property is affected thereby.    A legislative policy
would be quite surprising which intended a classification be-
tween drainage districts which had been initiated prior to
April, 1901, and those which might come into existence subse-
quent to that date.    While, perhaps, there is no constitutional
requirement for uniformity in the government of drainage
disricts, the common sense which dictated such a requirement
for town and county government would at least suggest its
advisability in regulating the government of these drainage
districts, which may become very numerous.    We should ex-
pect, therefore, that any provision with reference to their gov-
ernment would be framed so as to apply to all alike.    We
find nothing in the language of the amendments adopted in
1901 inconsistent with such a policy.    The method of that
act was to amend the language of the existing sections so that
such words as "the said order of confirmation," and the like,
became naturally applicable to any order of confirmation
which had been entered in compliance with the section of the
statutes; hence those words point more naturally to all orders
of confirmation than to any class thereof.    There is also, how-
ever, a provision of the act of 1901 which very clearly indi-
cates that the legislature contemplated that by its enactment
should be affected prior orders, and that is the portion which
prescribes the limit of time for appeals.    No such limit had
previously been fixed by the drainage statutes themselves,
but, the right of appeal being given generally, it was open to
argument that such time was controlled by the general stat-
utes regulating appeals—either two years, if these final orders
were judgments, or thirty days after notice of entry, if they
were mere orders.    Ch. 43, Laws of 1901, provided that all

orders confirming assessments should be final and conclusive unless appealed from "within thirty days after the entry of such order or within thirty days after this act shall take effect." The last clause was, of course, meaningless, unless it applied to preexisting orders, and we must presume that such was its intent. If the legislature had in contemplation that a part of this act was to control orders then existing, and not to be confined to a class of subsequent orders thereby created, the inference is almost irresistible that similar application of the whole act was within the contemplation of the legislative mind. We are persuaded, therefore, both from the words of the act and from its general policy, that such was the intent of the legislature, and that, to give effect to such intent, we must and do hold that authority was conferred upon the circuit courts to modify existing orders of confirmation, and thus to place all the drainage districts of the state under continued judicial control as to those subjects which might originally have been submitted for judicial determination by the report of the commissioners.

Some question is made of the constitutional power of the legislature to enact a law bearing such construction, but we cannot consider it worthy of serious consideration, at least with reference to mere matters of remedy and procedure such as that now before us. Such subjects have always been held not embarrassed by any of the constitutional prohibitions. *Oshkosh Waterworks Co. v. Oshkosh,* 109 Wis. 208, 85 N. W. 376; *Id.* 187 U. S. 437, 23 Sup. Ct. 234.

The result of these views is, of course, that the order of April, 1901, like the preceding order, was within the jurisdiction of the circuit court, and the plaintiff, having had and waived due opportunity to appeal therefrom, cannot attack the same thus collaterally; hence that the complaint before us fails to show any right in the plaintiff to enjoin or restrain the issue of the bonds or the levy and collection of the assessment authorized by the first two orders.

The additional assessment of approximately $40,000, and the issue of bonds to extend the time of payment thereof, directed by the order of July, 1901, is assailed on the further ground that the procedure taken, which is in accord with the statute, fails to constitute due process of law, in that no notice whatever is required by the statute, or was in fact given, of the application of the commissioners to make such assessment; resulting, as appellant claims, in the taking from him of his property by the collection of assessments, and, in advance thereof, by the imposition of a lien upon his land. The statutory provision is sec. 1379—24, Stats. 1898, as amended by sec. 6, ch. 43, Laws of 1901, and is:

"If in the first assessment the commissioners shall have reported to the court a smaller sum than is needed to complete the work of construction or repair, . . . a further assessment on the lands benefited, proportioned on the first, shall be made under the order of the court or the presiding judge thereof without notice."

We should have little doubt of the cogency of such an objection to a statute which originally authorized an imposition or assessment upon private property without any notice to him whatever, whether the result were to be accomplished by the judgment of a court, or by the decision of some legislative or executive tribunal. This second order, however, and the law authorizing it, are not such. It is at most but one step in a general scheme of procedure, and must be considered in connection with the other parts. It has frequently been held that, even in tax proceedings out of court, notice of each step is by no means essential to due process of law, but that notice at any stage of the proceedings whereby the property owner has opportunity to be heard as to the apportionment of a share of the burden to him is sufficient. *State v. Whittlesey,* 17 Wash. 447, 50 Pac. 119; *Meggett v. Eau Claire,* 81 Wis. 326, 333, 51 N. W. 566; *Hennessy v. Douglas Co.* 99 Wis. 129, 148, 74 N. W. 983; *Davidson v. New Orleans,* 96 U. S. 97. Even more obviously is it competent

for the legislature to dispense with notice of the various steps in a judicial proceeding after jurisdiction over a party has been acquired by due notice of its commencement. He may then be required to keep himself informed of all further steps or action within the limits of the jurisdiction so obtained.

A still further and perhaps stronger reason controls the objection now made, namely, that notice of this additional assessment could have availed plaintiff nothing. Every question upon which he had any right to be heard had already been concluded. The court, by its former order, had established the public purpose, the benefit to plaintiff's land, and the proportion. All that could be done by the commissioners or by the court in making this second assessment was mere arithmetical computation, for which the presence of a property owner was neither necessary nor useful. No error therein could prejudice him. *People ex rel. Barber v. Chapman,* 127 Ill. 387, 19 N. E. 872; *Meggett v. Eau Claire,* 81 Wis. 332, 51 N. W. 566.

For these reasons, we conclude that it was competent for the legislature to authorize this step without further notice, and that the order of July 18, 1901, was also within the jurisdiction of the court, and, like its former orders, impregnable to collateral assault.

The conclusiveness of these several adjudications fully appears from the complaint, and renders all the other facts insufficient to support any action to restrain the execution of those orders or decrees. The demurrer was therefore properly sustained.

*By the Court.*—Order appealed from is affirmed.