### IN THE

# SUPREME COURT OF TENNESSEE

### FOR THE

## WESTERN DIVISION

---

## JACKSON, APRIL TERM, 1921.

---

W. J. Brite *et al.* v. A. A. Grubbs *et al.*

(*Jackson*, April Term, 1921.)

1. **DRAINS.** Notice of additional assessment in proportion to original assessment not required.

Under General Drainage Act, sections 1-11, 13, 18, providing for the establishment of drainage districts and for the making of an assessment, and, if the first assessment is insufficient, for the making of an additional assessment in the same ratio as the first, and only specifically providing for notice of the hearing as to the advisability of the creation of the district and on the hearing of the report of the commissioners as to the classification of the lands, notice of intention to make an additional assessment is unnecessary, and it is immaterial that failure to give notice prevents landowners from exercising their option, under section 27, to pay the whole assessment prior to the issuing of bonds, as they are charged with constructive notice of the proceedings. (*Post*, pp. 656-663.)

Acts cited and construed: General Drainage Act, sections 1-11, 13 18.

Cases cited and approved: State v. Whittlesey, 17 Wash., 447; Meggett v. Eau Claire, 81 Wis., 326; Hennessy v. Douglas Co., 99 Wis., 129; Davidson v. New Orleans, 96 U. S., 97.

(647)

Brite v. Grubbs.

Cases cited and distinguished:   Nicely v. Hickman, 188 Ky., 258.
   People ex rel. Barber v. Chapman, 127 Ill., 387;   Stone v. Little
   Yellow Drainage Dist., 118 Wis., 388.

2.  **CONSTITUTIONAL LAW.** Drainage act does not deny due process
    because authorizing additional assessment without notice.

The General Drainage Act, construed as authorizing the making
   of an additional assessment in the same ratio as the original
   assessment without notice, does not violate the due process clause
   of the federal Constitution.   (*Post, p.* 664.)

Cases cited and approved:   Seattle v. Kelleher, 195 U. S., 351;   Nor-
   wood v. Baker, 172 U. S., 269;   Spencer v. Merchant, 125 U. S.,
   345;   Hagar v. Reclamation District, 111 U. S., 701.

3.  **DRAINS.** Limiting assessments in decree establishing district was
    authorized and did not prevent additional assessment.

Under the General Drainage Act, expressly authorizing an additional
   assessment in the same ratio as the first assessment if the first
   assessment be insufficient, a provision in the original decree
   establishing the district limiting assessments to $10 an acre
   was unauthorized and void and did not prevent the making of
   an additional assessment, where the original assessment was
   insufficient to complete the work and the additional assessment
   did not put upon the land a greater burden than it should bear.
   (*Post, pp.* 664, 665.)

Acts cited and construed:   Acts 1909, ch. 185.

FROM HENRY.

Appeal from the Chancery Court of Henry County.—
Hon. J. W. Ross, Chancellor.

Fitzhugh & Atkins, for complainants.

Hillsman Taylor and R. H. Hudson, for defendants.

Mr. Justice McKinney delivered the opinion of the Court.

The complainants, being owners of land within drainage district No. 1 in Henry county, filed the original bill for the purpose of enjoining the collection of a special or additional assessment to that provided in the original decree creating said drainage district.

Said drainage district was created by decree entered in the county court of Henry county on April 15, 1918. Said decree provided an assessment of $10 per acre on the six thousand seven hundred acres of land embraced within said district, and contained the following recital:

"And it appearing to the court from testimony introduced as to the estimated cost of the improvement and the quantity of the lands within said proposed district, that the amount of said estimated cost of said district of $10 per acre for the lands benefited will not be a greater burden than should be properly borne by said lands, and that it will be to the best interest of persons owning lands within said proposed district to make said improvement as planned by the engineers, and it is so adjudged and decreed. It now appears to the court, from what has heretofore been decreed, that there is a necessity for making the contemplated improvement in the way of drainage along said river bottom as planned and recommended by the engineer in his said reports, with maps, plats and profiles, etc., as a part thereof, and it is so adjudged and decreed, but upon the terms and conditions that the construction of said proposed improvements does not exceed a maximum cost of $10 per acre, and for

which no acre shall be assessed more than $10, ·it is so ordered, adjudged and decreed.''

Bonds for $67,000 were sold, and the proceeds derived therefrom were consumed in making said improvement; but said sum was insufficient to complete the work, and it became necessary to make an additional assessment of $2.50 per acre, which was done by decree entered in said county court on August 11, 1920.

This latter assessment was ordered without any notice to the landowners, and by the bill the complainants sought to enjoin its collection.

The bill was demurred to on various grounds, all of which were overruled by the Chancellor, and the defendants were permitted to appeal to this court.

In the first place, it is insisted by the complainants that the decree of August 11, 1920, is void because no notice was given them of the proposed additional assessment.

This makes it necessary to construe certain provisions of the General Drainage Act, chapter 185 of the Acts of 1909. Only such portions of said act as relate to the questions here involved will be referred to.

By section 1 provision is made for the establishment of drainage districts within the various counties of the State, and jurisdiction is vested in the county court, presided over by the county judge or chairman, to establish such districts and to have the work contemplated by the act performed.

Section 2 provides for the filing of a petition by one or more persons owning land within the proposed district, which shall contain certain information as to the character and boundaries of the lands proposed to be embraced

within the district, and further provision is made for the execution of a prosecution bond by the petitioners.

Section 3 provides that after the filing of said petition and the execution of said bond, the court shall appoint a disinterested and competent engineer, who shall be furnished a copy of said petition, and whose duty it shall be to examine the lands described in said petition and any other lands that would be benefited by said improvement, and survey and locate such drain or ditch or improvement, as the case may be, and file his report giving certain information, and also the probable cost of the improvement.

Section 4 provides that upon the filing of the return of the engineer the county court shall examine the return; and if the plan seems to be expedient and meets the approval of the court, notice shall be given the landowners within the district that, upon a specified day, the court will hear the matter set forth in said petition, and it further provides that the persons concerned may appear and be heard without formally answering said petition in writing.

Section 5 provides for the filing of claims for damages by any property holder who considers that he will suffer injury on account of said improvement.

Section 6 provides that—Upon the hearing the court, if convinced that the improvement would not be for the public benefit or utility, or conducive to the public health or welfare, shall dismiss the proceedings; "but if the court should find such improvement conducive to the public health or welfare, or to the public benefit or utility, it shall determine and adjudge the necessity

therefor of such levee or drainage district; and if no claim for damages has been filed, as provided in section 5 of this act, the court may, if deemed advisable, locate and establish said district, or may refuse to establish the same, as the court may deem best; and at such hearing the court may order said engineer, or a new engineer appointed by it, if deemed advisable, to make further examination and report to the court as to said improvement, in which event the hearing shall be continued till the filing of such further report.''

Provision is also made for the appointment of a jury of view to pass upon claims filed for damages.

Section 7 sets out the duties of the jury of view.

Section 8 provides that the court shall consider the damages awarded by the jury of view in determining whether the cost of construction is practicable and empowers the court to establish or to refuse to establish said district, as in its judgment may seem just and right, and said section further makes provision for an appeal to the circuit court upon the part of any person or persons affected by said decision, and further sets out that the proceedings shall be in the circuit court.

Section 9 provides how any damages allowed by the court shall be paid.

Section 10 provides for new surveys, estimates of costs, etc., where the court is not satisfied as to the report of the engineer.

Section 11 is the main provision of the act questioned in this proceeding, and is as follows:

''Be it further enacted, that when the drainage or levee district, or other improvement herein provided for, shall

have been located and established as provided for in this act, the county court shall appoint three commissioners, one of whom shall be a competent civil engineer, and two of whom shall be freeholders of the county, not living within the levee or drainage district, and not interested therein, or in a like question, nor related to any party whose land is affected thereby; and they shall, as soon as practicable after their appointment, and after being duly sworn to perform their duty faithfully and impartially to the best of their ability, inspect and classify all the lands benefited by the location and construction of such drainage or levee district in a graduated scale of benefits, naming the tract or tracts of each owner and so classifying the same, each tract to be numbered according to the benefit received, as below provided, by the proposed improvement; and they shall make an equitable apportionment and assessment of the costs, expenses, cost of construction, fees and damages assessed for the construction of any such improvement; and make report in writing thereof to the county court. In making said estimate and apportionment, the lands receiving the greatest benefit shall be marked on scale of one hundred, and those benefited in a less degree shall be marked with such percentage of one hundred as the benefit received bears in proportion thereto. This classification, when finally established, shall remain as a basis for all future assessments connected with the objects of said drainage or levee district, unless the county court, for good cause, shall authorize a revision thereof. In making such classification, said commissioners are authorized to divide the land of one owner lying in one body into more than one

tract, and classify each subdivision thereof, if they are of opinion that portions of such entire tract will be more benefited than other portions, and especially when such entire tract is a large one, and that it will be more equitable and just to so classify it in subdivisions.

"In the report of such commissioners they shall specify each tract of land by reasonable description and the ownership thereof as the same appears on the tax books of the county or as the same has been previously adjudged in the proceeding, and the court shall cause notice to be served upon each person whose name appears as the owner, and upon any person in actual occupancy of the land, which notice shall state the amount of special assessments apportioned to each owner on each tract or lot, the day set for hearing the same before the court, that all objections thereto must be made in writing and filed with the county clerk on or before noon of the day set for hearing; and said notices shall be signed by the county clerk and served at least five days before the time set for the hearing. If any such owner be a nonresident of the State, or his name or residence is unknown and cannot be ascertained after diligent inquiry, then service of such notice upon the resident agent or attorney of such person shall be sufficient; if there be no such resident agent or attorney of such person, then the assessment may be made without notice, just as taxes are assessed without notice in such cases. When the day set for hearing has arrived, and the hearing is not continued by the court for good reason, as it may be, and when the hearing is had, the county court shall proceed to hear and determine all objections made and filed to said

report, and may increase, diminish, annul, or affirm the apportionment and assessments made in such report, or in any parts thereof, as may appear to the court to be just and equitable; but in no case shall it be competent to show that the lands assessed would not be benefited by the improvement; and when such hearing shall have been had, the county court shall assess such apportionment so fixed by it upon the lands within such levee or drainage district. If the first assessment made by the court for the original cost of any improvement as provided in this act is insufficient, the court may make an additional assessment in the same ratio as the first.

"If for any reason the court annuls *in toto,* or sets aside such report of the commissioners, it shall order them to make a new report, or shall remove them and appoint new commissioners to act as in the first instance if desired by the parties concerned."

Section 13 provides for appeals from the order of the court fixing the assessment of benefits upon the lands involved.

Section 18 provides for the appointment of three directors, two of whom shall own land within the drainage district, who shall have general control and management of the business affairs of such district and supervision of the same, and shall be vested with the power and authority to make contracts for all improvements to be done in said district.

The bill filed in this cause contains the following recitation:

"Said drainage district was created and established under and by virtue of the drainage laws of the State

of Tennessee, the same being chapter," etc., "and that bonds were issued and sold by the board of directors in the sum of $67,000."

No attack is made upon any phase of the proceedings prior to the entering of the decree of August 11, 1920.

We will assume, therefore, that the proceedings were regular and valid up to that stage. The bill does not charge that the $67,000 realized from the sale of the first bond issue was not judiciously expended, or that it was not necessary to sell additional bonds in the sum of $16,750 to complete the improvement. Upon the other hand, the bill alleges the following:

"Bonds were issued and sold in order to derive $16,750 more money to be expended by the board of directors in connection with said drainage district."

Neither does the bill charge that the additional assessment exceeds the benefits accruing to the lands on account of the improvements. Hence we will assume that in order to complete the improvement it was necessary to sell the additional bonds and to make a further assessment for that purpose, and that the complainants received the benefit of the proceeds derived from a sale of said bonds. It also appears from the allegations of the bill that the second assessment was made in the same ratio as the first; that is, on a level rate.

The act specifically provides for notice to the landowners only in the two following instances:

(1) On the hearing of the petition as to the advisability of the creation of the district.

(2) On the hearing of the report of the commissioners as to the classification of the lands within the district.

Brite v. Grubbs.

Upon the hearing of the report of the commissioners as to the classification, the act provides that the court shall assess .the property within the district, and "if the first assessment made by the court for the original cost of any improvement as provided in this act is insufficient, the court may make an additional assessment in the same ratio as the first."

The act further provides that this classification, when finally established, shall remain as a basis for all future assessments connected with the objects of said drainage or levy district, unless the county court, for good cause, shall authorize a revision thereof.

It is apparent, therefore, that by the very language of the act an additional assessment is contemplated, and, under the provisions of the act, such assessment is a matter of formality, about which no contest can arise. Hence notice of an intention to make said additional assessment is unnecessary, and as a matter of fact no provision for such notice is to be found in the act.

The act contemplates only two matters of contest, viz., the practicability of establishing the district and the classification of the lands within the district. As to both of these matters the act provides that the parties affected shall have due notice, and same was given in this case. But after the district has been established and the lands have been classified, then, under the terms of the act, the court is authorized to assess the owners on the basis of the classification for a sum sufficient to pay for the improvement, and if the original assessment is not sufficient, the act provides that an additional assessment may be made, and, in effect, without notice.

In the cause under consideration, the commissioners, reported that each tract of land within the district would receive the same benefit, and marked each on a scale of 100, as provided by the act. Upon this classification the court assessed each acre of land within the district at $10. This basis was followed in making the second assessment, as provided by the act, and every acre within the district was assessed $2.50. As previously stated, the second assessment was a mere formality, and no valid reason has been assigned as to why complainants should have been given notice of same.

It is insisted, however, by the complainants that section 27 evinces a contrary intention. So much of said section as is pertinent is as follows:

"Be it further enacted, that if the county court shall determine that the estimated cost of reclamation and improvement of such district of land or levee or drainage district is greater than should be levied in a single year upon the lands benefited, the court may fix the amount that shall be levied and collected each year, and may issue drainage bonds of the county, bearing not more than six per centum annual interest, said interest payable annually, and may devote such bonds at par, with accrued interest, to the payment of the expenses and work as it progresses, or may sell the same at not less than par, with accrued interest, and devote the proceeds to such payment; and if, in the sale of said bonds, a premium is received, such premium shall be credited to the drainage fund; and should the cost of such work exceed the estimate, a new apportionment of the assessment may be made and levied and other bonds issued

and sold in like manner, but in no case shall the bonds run longer than twenty years. Any property owner may pay the full amount of the benefits assessed against his property before such bonds are issued and receive a receipt in full therefor.''

The insistence of counsel for complainants is that the expression ''a new apportionment of the assessment may be made and levied and other bonds issued and sold in like manner,'' etc., means that the same notice shall be given as was required when the first apportionment was reported by the commissioners.

The question here raised is not involved in this suit, and we therefore refrain from passing upon the same since no new apportionment was made, but the assessment was based upon the original apportionment as expressly provided by the act.

It is further insisted that for want of notice complainants were deprived of their option to pay the sums assessed against them, prior to the issuing of the bonds and receiving a receipt in full therefor.

Complainants were charged with constructive notice of the proceedings in the cause, and failing to keep informed as to the orders entered in the cause affords no excuse for failing to pay their assessments before the bonds were sold.

In 15 Corpus Juris, p. 810, it is said:

''When parties are rightfully in court the court has jurisdiction over them, and that jurisdiction continues, without further notice, and as long as any steps can be rightfully taken in the cause, a court's power to apply a remedy being coextensive with its jurisdiction over the

subject-matter; and a court having property in its possession may determine all questions relative to title, possession, and control of the same. So demands, matters or questions ancillary or incidental to or growing out of the main action, and also which come within the above principles, may be taken cognizance of by the court and determined, for such jurisdiction is in aid of its authority over the principal matter, even though the court may thus be called upon to consider and decide matters which, as an original cause of action, would not be within its cognizance.''

In *Nicely* v. *Hickman,* 188 Ky., 258, 221 S. W., 566, it is stated: ''Appellants' chief complaint is that they had no notice of the change in the assessments, and never consented to the entry of the orders on the exceptions. But they were properly before the court and chargeable with notice of all subsequent steps taken in the proceedings down to and including the entry of the judgment. 29 Cyc., 1116. Due diligence demands a closer attention to the conduct of the court's business than that given by appellants in this instance. When duly summoned, parties are presumed to be in court attending to their causes, either in person or by counsel, and so are bound to notice the steps taken. . . . It would be preposterous in a proceeding such as this, with something over a thousand people involved, to require the service of a notice of every step taken. . . . Though the viewers' report was filed December 30, 1916, many sessions of the county court were held and orders in the proceedings entered before the filing of the petition in this case, January 19, 1918.''

In *People ex rel. Barber* v. *Chapman,* 127 Ill., 387, 19 N. E., 872, the court said:

"The objection that appellee was not notified of the resolution and order of the commissioners making these special assessments, and of the making and filing of the assessment roll, and did not in fact learn of the same until the time allowed by the statute for an appeal therefrom expired, is most strenuously insisted upon. It would seem to be a sufficient answer to this contention to say that the statute does not require such notice to be given. The better answer, perhaps, is that no reason is perceived why such notice should be given. From the time the drainage commissioners assume to exercise the powers conferred upon them, and which is to result in the levying of a special . . . assessment, the proceeding may not inaptly be likened to a suit in court. The commissioners, as a first step, make a classification of the land. The property owners are then brought before them by notice, . . . and the succeeding steps to be taken, both by the property owners and the commissioners, follow in regular progression, and without unnecessary delay. And for the same reason that a party over whose person the court has acquired jurisdiction is required to take notice of the different steps taken in his cause, the property owner in a drainage district, who has been notified of the classification of his land, must also be required to take notice of each succeeding step taken by the commissioners to effect the object for which the district has been organized."

In *Stone* v. *Little Yellow Drainage District,* 118 Wis., 388, 95 N. W., 405, it appears that on June 4, 1900, a

decree had been entered creating a drainage district and assessing the landowners within same $40,000. In July, 1901, an additional assessment of $40,000 was levied without giving notice. The Drainage Act contained the following provision (St. 1898, section 1379—24):

"If in the first assessment the commissioners shall have reported to the court a smaller sum than is needed to complete the work of construction or repair, a further assessment of the lands benefited, proportioned on the first, shall be made under the order of the court or presiding judge thereof without notice."

It was insisted that the inhibition to provide notice rendered the proceeding void, in that it contravened the "due process" clause of the federal Constitution. Responding to this insistence the court said:

"We should have little doubt of the cogency of such an objection to a statute which originally authorized an imposition or assessment upon private property without any notice to him whatever, whether the result were to be accomplished by the judgment of a court, or by the decision of some legislative or executive tribunal. This second order, however, and the law authorizing it, are not such. It is at most but one step in a general scheme of procedure, and must be considered in connection with the other parts.

"It has frequently been held that, even in tax proceedings out of court, notice of each step is by no means essential to due process of law, but that notice at any stage of the proceedings whereby the property owner has opportunity to be heard as to the apportionment of a share of the burden to him is sufficient. *State* v. *Whit-*

*lesey,* 17 Wash., 447, 50 Pac. 119; *Meggett* v. *Eau Claire,* 81 Wis., 326, 51 N. W., 566; *Hennessy* v. *Douglas Co.,* 99 Wis., 129, 148, 74 N. W., 983; *Davidson* v. *New Orleans,* 96 U. S., 97, 24 L. Ed., 616.  Even more obviously is it competent for the legislature to dispense with notice of the various steps in a judicial proceeding after jurisdiction over a party has been acquired by due notice of its commencement.  He may then be required to keep himself informed of all further steps or action within the limits of the jurisdiction so obtained.  A still further and perhaps stronger reason controls the objection now made, namely, that notice of this additional assessment could have availed plaintiff nothing.  Every question upon which he had any right to be heard had already been concluded.  The court, by its former order, had established the public purpose, the benefit to plaintiff's land, and the proportion.  All that could be done by the commissioners or by the court in making this second assessment was mere arithmetical computation, for which the presence of a property owner was neither necessary nor useful."

This second issue of bonds, here involved, is in the hands of parties who paid full value for same, and the complainants have received the benefits of the proceeds derived from their sale.

Since the statute makes no provision for notice of a second assessment, and since no valid reason has been suggested for the necessity of such notice, we are of the opinion that it would be inequitable and unjust to hold that said assessment was invalid.

It is next insisted that the failure to give notice makes the act violative of the "due process" clause of the federal Constitution.

The opinion in *Stone* v. *Little Yellow Drainage District,* quoted from above, is a complete answer to this contention. The principal announced in that case has been affirmed by the supreme court of the United States in the following cases: *Seattle* v. *Kelleher,* 195 U. S., 351, 25 Sup. Ct., 44, 49 L. Ed., 232; *Norwood* v. *Baker,* 172 U. S., 269, 19 Sup. Ct., 189, 43 L. Ed., 443; *Spencer* v. *Merchant,* 125 U. S., 345, 8 Sup. Ct., 921, 31 L. Ed., 763; *Hagar* v. *Reclamation District,* 111 U. S., 701, 4 Sup. Ct., 663, 28 L. Ed., 569.

In the last place it is insisted that the limitation of $10 per acre contained in the decree of April 15, 1918, is a final decree that is valid and binding upon the parties.

We cannot agree to this contention. The act contains no provision authorizing such a limitation. Upon the other hand, it provides, in express terms, that if the original estimate is not sufficient to complete the work an additional assessment may be levied.

As a general rule, public improvements cost more than the original estimates, due to many causes. It would be an unfortunate situation if, after expending $67,000 on this improvement, it should be entirely lost for the want of an additional sum of $16,750 with which to complete it, especially in view of the fact that said additional assessment would not put upon the land a greater burden than it should bear, as appears in this cause.

In some States the legislatures have undertaken to provide means by which the maximum cost of the improve-

ment shall be determined and fixed before the work is begun. In those cases the question of the cost is gone into very fully and thoroughly in reaching a maximum sum to be expended, but under our statute no such provision is to be found, and it was evidently not the intention of the legislature to limit the maximum cost of the improvement to the estimate made by the engineer. We are therefore of the opinion that the action of the court in undertaking in the original decree to limit the cost of the improvement was unauthorized and void.

Other questions are raised in the cause, which, however, in view of the above conclusions, make their determination unnecessary.

Chapter 185 of the Acts of 1909 has been amended in several particulars by subsequent acts; but we deem it unnecessary to refer specifically to said amendments, since they do not affect the conclusions which we have reached.

Upon the whole we find no merit in the bill of complainants, and the decree of the chancellor will be reversed, the demurrer of the defendants will be sustained, and the bill will be dismissed, at the costs of the complainants.