THIELEN and another, Appellants, vs. METROPOLITAN SEW-
ERAGE COMMISSION and others, Respondents.

*June 10—July 8, 1922.*

*Drains: Metropolitan sewerage district: Maps of district: Lands
benefited by creation of district: Lands outside of natural
drainage area: Constitutional law: Special legislation: Uni-
formity of town and county government: Uniformity of taxa-
tion: Police power.*

1. Sub. 5, sec. 1, ch. 554, Laws 1921, providing that cities of the
   first class seeking to create a metropolitan sewerage district
   shall submit to the metropolitan sewerage commission maps
   and surveys showing the portion of the county which is
   within the same drainage area as the city's sewerage system,
   in order that the commission may determine the boundaries
   thereof in towns outside of such city, does not exclude maps
   and surveys made after the enactment if they show the por-
   tion of the county which was within the same drainage area
   as the city.
2. Although a portion of the territory within the metropolitan
   district presently consists of farming communities without
   need of intercepting sewers, it is concededly suburban in
   character, and in the light of reasonable probabilities of the
   extension of manufacturing districts and an increasing den-
   sity of population requiring additional sewerage facilities, the
   property within the district receives a present benefit justify-
   ing the exercise of the taxing power.
3. The metropolitan commission, reasonably following the legis-
   lative command in fixing the district boundaries to enable the
   sewage plant of a city of the first class to dispose of the
   district sewage, may include areas embracing lake frontage,
   although such areas are not within the same drainage basin,
   since to permit the drainage into the lake would destroy the
   efficacy of the scheme, and as the engineering problem is one
   not otherwise capable of practical solution, there being sub-
   stantial compliance with the legislative command.
4. Said ch. 554, providing that a city of the first class shall declare
   the necessity therefor before a county may avail itself of a
   metropolitan sewerage commission, does not, because there is
   only one county in the state now containing such a city,
   violate sub. 7, sec. 31, art. IV, Const., prohibiting any special
   or private law granting corporate powers or privileges except
   to cities, since the act is general and available to other
   counties when they contain cities of the first class.

5. Nor does said ch. 554 violate sec. 22, art. IV, Const., providing that the legislature may confer upon county boards of supervisors local legislative and administrative powers, nor sec. 23, art. IV, Const., providing that the legislature shall establish but one system of town and county government, which shall be as nearly uniform as practicable.

6. Because only the property in the district is to be taxed, said ch. 554 does not violate sec. 1, art. VIII, Const., providing that taxation shall be uniform and upon such property as the legislature shall prescribe, since public-health improvements may be made at the expense of the property directly benefited, and the legislature acts through the commissions in establishing the district boundaries and directs what moneys should be raised by taxation, leaving to the taxing officers merely the ministerial duty of providing for funds upon the tax rolls.

7. Said ch. 554 is a legislative exercise of the police power to promote the public health and general welfare, and the court has nothing to do with the wisdom of the act or choice of methods unless it clearly contravenes some constitutional provision.

APPEAL from a judgment of the circuit court for Milwaukee county: JAMES WICKHAM, Judge. *Affirmed.*

The city of Milwaukee and the suburban area in the county lying outside of such city of Milwaukee are traversed by the Milwaukee, Menominee, and Kinnickinnic rivers, each of which receives in its flow considerable quantities of sewage matter from suburban cities, villages, and densely populated urban territory outside of the city of Milwaukee. The population of the suburban area is approximately 85,000 people. The sewage matter collected in the rivers is discharged through a single outlet into Lake Michigan in a more or less untreated condition, with the result that the waters of Lake Michigan are greatly polluted, thus endangering the water supply of the city of Milwaukee and of the territory beyond the city limits supplied with drinking water from the waterworks of the city of Milwaukee.

With a view of reducing to a minimum the menace created by such a situation there was enacted ch. 608 of

the Laws of 1913, under which and the acts amendatory thereof and supplemental thereto the *Milwaukee Sewerage Commission* was organized and the work of constructing a sewage disposal plant with intercepting sewers planned to extend to the boundaries of the city was undertaken, upon which undertaking several million dollars had been expended prior to 1921.

Under the plan adopted and now being carried out in the city of Milwaukee, intercepting sewers were so planned and constructed that connections might be made with them by interceptors extending into the suburban areas outside of the city of Milwaukee, which suburban interceptors would in turn collect the sanitary sewage from suburban areas and carry it to the Milwaukee disposal works, and thus do away with the carrying of untreated sewage through the rivers referred to and discharging the same directly into the waters of Lake Michigan.

In order to provide a unified, effective system for the territory involved, both within and without the city of Milwaukee, ch. 554 of the Laws of 1921 was enacted. The parts of that act material here are printed in the margin.[1]

---

[1] "Section 1. A new section is added to the statutes to read: 59.96 (1) In any county where the common council of any city of the first class within such county shall have adopted a resolution declaring that it is necessary to provide sewage disposal works for such city and in which a sewerage commission has been appointed and qualified, and has adopted plans for, and commenced the construction of a sewage disposal plant for said city the governor shall appoint three sewerage commissioners who shall constitute and be known as the metropolitan sewerage commission of such county. There shall be certified by the sewerage commission of such city of the first class one person, by the state board of health of the state of Wisconsin one person, to the governor of the state of Wisconsin, who shall appoint as members of such metropolitan sewerage commission the two persons thus certified, and who shall further name as the third member of such commission a resident within the drainage area hereinafter provided of said county outside of the city limits of such city of the first class. They shall be appointed within thirty days after the taking effect of this act."

"5. Upon the organization of such metropolitan sewerage commission, the sewerage commission of such city of the first class

Thielen v. Metropolitan Sewerage Commission, 178 Wis. 34.

The sewerage commissioners were appointed in the manner prescribed by sub. (1) of sec. 1 of said chapter. Upon the organization of the *Commission* it proceeded in the manner indicated in sub. 5 to determine the boundaries of the proposed Metropolitan sewerage district, and for that purpose there was submitted to it certain maps and surveys prepared by the *Sewerage Commission* of the city of Milwaukee. After a thorough and exhaustive examination of the maps and surveys and a careful investigation into the whole subject, the boundaries were established.

shall submit to such metropolitan sewerage commission the maps and surveys showing the portion of said county which is within the same drainage area as the sewerage system of such city of the first class, the sewerage from which may be cared for by the disposal plant located in such city of the first class, and said metropolitan sewerage commission shall thereupon by resolution determine the boundaries thereof in each of the respective towns and villages outside of the city limits of such city of the first class and must file with the clerk of each of the cities, towns or villages affected by this act and with the state board of health a copy of the map and survey and boundaries by it adopted.

"6. The metropolitan sewerage commission shall project, plan, construct and maintain in such county outside of the city limits of such city of the first class main sewers for the collection and transmission of house, industrial and other sanitary sewerage to and into the intercepting sewerage system of such city of the first class, sufficient in the judgment of such commission to care for the sanitary sewerage of the territory in said county outside of said city of the first class within the drainage area hereinafter provided for.

"(a) The said metropolitan sewerage commission is authorized in its name to contract and to be contracted with, and to sue and to be sued.

"(b) The metropolitan sewerage commission may require any town, city or village in such county, or any occupant of any premises outside of said city of the first class, located in such county, engaged in discharging sewerage effluent from sewage plants, sewage refuse, factory waste, into any river or canal within such county within the drainage area hereinafter provided for to so change or rebuild any such outlet, drain or sewer as to discharge said sewage, waste or trade waste into the sewers of such city, town or village or into said main sewers by it established and under such regulations as the commission may determine.

"(h) Whenever necessary in order to promote the best results from the construction, operation and maintenance of the systems

The *Metropolitan Sewerage Commission* and the *Milwaukee Sewerage Commission,* for the purpose of obtaining funds for carrying on the work of constructing the intercepting sewerage system, adopted certain resolutions in accordance with the terms of the act as a groundwork for the issuance of bonds in the manner therein provided. This action was begun for the purpose of restraining and enjoining the issuance, printing, signing, execution, sale, and delivery of any bonds proposed to be issued in accordance with such resolutions, and to restrain the county clerk of

provided for in this section, and to prevent damage to the same from misuse, the commission may make, promulgate and enforce such reasonable rules and regulations for the supervision, protection, management and use of said system as it may deem expedient, and such regulations shall prescribe the manner in which connections to main sewers and intercepting sewers shall be made, and may prohibit discharge into such sewers, of any liquid or solid waste deemed detrimental to the sewerage system herein provided for."

"(k) The powers of the commission shall not extend to or apply to the territory of any city of the first class which may be constructing, building and operating its sewerage system under a commission provided by law."

"(o) Said metropolitan sewerage commission or said sewerage commission of said city of the first class, and their respective officers and agents are authorized to make examination of any and all sewers and sewerage systems within said county outside of the limits of said city of the first class for the purpose of determining if said systems are defective in operation, construction, design or supervision."

"7. Whenever said commission requires funds out of which to pay for the projection, planning, construction and maintenance of said main sewers, or in other respects in connection therewith, it shall adopt a resolution stating the amount that it requires for such purposes and shall file with the county board of supervisors of such county a certified copy thereof, and thereupon such board of supervisors is required and directed to provide by resolution for issuing corporate bonds of such county for the amount so required payable within twenty years from the time of their issue in lawful money of the United States, bearing interest at a rate to be determined in said resolution, and such bonds shall be in such form as may be prescribed by such resolution and shall be signed by the chairman of said board and by the clerk thereof and shall be called metropolitan sewerage bonds and shall be consecutively numbered and shall have interest coupons attached, and shall show on their face that the same are issued for the benefit of so much of the territory of

Milwaukee county and the various taxing officers from placing upon the tax roll of the various municipalities, in accordance with the provisions of ch. 554, any sum or sums certified to them in accordance with the terms of said chapter. We shall not attempt to set out in detail the resolutions nor the pleadings, but shall set out *in extenso* the findings of fact and conclusions of law made by the trial court, which are as follows:

"1. That at the time of the passage and publication of ch. 554 of the Laws of Wisconsin for the year 1921, the

said county as lies in the same drainage area as said city of the first class and there shall be annually levied by said county board a direct tax upon all taxable property in said drainage area sufficient to pay the annual interest thereon, and after and upon the expiration of the first ten years, to raise a sinking fund each year of ten per cent. on the principal of such bonds remaining unpaid and outstanding for the payment of such principal as the same becomes due, which tax shall be collected in the same manner as county taxes are collected. It shall not be necessary to submit any such bond issue to the vote of the people.

"(a) Upon the sale of any such bonds, the county board of such county shall pay the proceeds thereof to the county treasurer of said county for the credit of the said commission and said county treasurer shall, from time to time, against said fund, pay warrants or checks when authorized by said commission and signed by the chairman and secretary thereof.

"(b) Whenever after the organization of such metropolitan sewerage commission the sewerage commission of such city of the first class requires funds out of which to pay for the projection, planning, construction and maintenance of a sewerage system for the collection, transmission and disposal of house and other sewerage, and for constructing, building and maintaining its sewerage disposal plant in connection therewith, it shall adopt a resolution stating the amount that it requires for such purposes and shall file with the county board of supervisors of such county a certified copy thereof, and thereupon such board of supervisors is required and directed to provide by resolution for issuing corporate bonds of such county for the amount so required payable within twenty years from the time of their issue in lawful money of the United States, bearing interest at a rate to be determined in said resolution and such bonds shall be in such form as may be prescribed by such resolution and shall be signed by the chairman of said board and by the clerk thereof and shall be called metropolitan sewerage bonds and shall be consecutively numbered and shall have interest coupons attached, and shall show on their face that the same are issued for the benefit of so much of the territory of said county as

city of Milwaukee was a city of the first class, the common council of which had adopted a resolution declaring that it was necessary to provide sewage disposal works for said city, and in which a sewerage commission had been appointed and qualified, being the *Milwaukee Sewerage Commission* described in the complaint, and had adopted plans for and commenced the construction of a sewage disposal plant for said city, and that thereafter the *Metropolitan Sewerage Commission* was created and organized and

lies in the same drainage area as said city of the first class, and there shall be annually levied by said county board a direct tax upon all taxable property in such drainage area sufficient to pay the annual interest thereon, and after and upon the expiration of the first ten years, to raise a sinking fund each year of ten per cent. on the principal of such bonds remaining unpaid and outstanding for the payment of such principal as the same becomes due, which tax shall be collected in the same manner as county taxes are collected. It shall not be necessary to submit any such bond issue to the vote of the people.

"(c) Upon the sale of any such bonds, the county board of such county shall pay the proceeds thereof to the city treasurer of said city of the first class to the credit of the said sewerage commission of said city and said city treasurer shall, from time to time, against said fund, pay warrants or checks when authorized by said commission and signed by the chairman and the secretary thereof.

"8. When the sewerage commission of such city of the first class begins the operation of its sewage disposal plant it shall estimate and report to the clerks of every city, town or village within the drainage area of the city of the first class the actual cost, including interest at five per cent. upon said actual cost of so much of the intercepting sewers and sewage disposal plant constructed by the sewerage commission of such city of the first class prior to the organization of the metropolitan sewerage commission and before the first day of February in each year thereafter the sewerage commission of such city shall estimate and by resolution determine what sums in their judgment will be required to meet the expenses and disbursements of the sewerage commission of such city for the current fiscal year and shall include in such estimate and resolution as a part of the expense of the operation of such sewerage system all the expense of operation and of keeping in repair such sewerage system and disposal plant, including said main sewers constructed by said metropolitan sewerage commission, and also an amount equal to five per cent. per annum upon the actual cost as estimated and reported hereunder of said intercepting sewers and sewage disposal plant constructed prior to the organization of said metropolitan sewerage commission, and shall estimate and report the proportion thereof that will be due from each city, town or village in said drainage area in payment for the transmission and disposal of its sewage and for keeping in repair the intercepting sewers and

its members qualified as required by law and as alleged in the answer of said *Metropolitan Sewerage Commission*.

"2. That on and after the organization of said *Metropolitan Sewerage Commission*, the said *Milwaukee Sewerage Commission* submitted to the said *Metropolitan Sewerage Commission* maps and surveys *showing the portion* of Milwaukee county which was then within the same drainage area as the sewerage system of said city of Milwaukee, and said *Metropolitan Sewerage Commission* thereupon,

disposal plant, including said main sewers constructed by said metropolitan sewerage commission, and each city, town or village shall pay that proportion of the whole expense, as the amount of sewage it contributes bears to the total amount of sewage disposed of by said city, except such city of the first class shall be entitled to a credit against its proportion of such expenses equal to said five per cent. of the actual cost of such intercepting sewers and disposal plant constructed prior . to the organization of such metropolitan sewerage commission, but the charge and the credit of such five per cent. of such actual cost shall continue only until provision has been made by which said entire drainage area, including said city of the first class, shall reimburse said city of the first class for the amount of such actual cost.

"9. Such sewerage commission of such city of the first class shall, on or before the first day of October of each year, certify in writing to the clerks of the several cities, towns and villages having territory in said drainage area, the total amount necessary to pay the expenses for the transmission and disposal of said sewage for said year and the share thereof that each ' such city, town and village must pay after the report has been made as herein provided.

"(a) Upon the receipt of such report by each such clerk, he shall submit the same to the next regular or special meeting of the governing board of said city, town or village and such board shall, by resolution, levy and assess taxes sufficient to pay the same, against all of the taxable property included within the drainage area in said town, city or village. Following such assessment and levy, the clerk of each such city, town or village shall place the same upon the tax roll to be collected as other taxes are collected upon all of the taxable property within such drainage area, and such moneys when collected shall be paid by the treasurer of each such city, town or village, to the treasurer of such city of the first class to the credit of said sewerage commission of such city of the first class.

"(b) There is imposed upon all towns in counties in which under the provision of this section a metropolitan sewerage commission is created and appointed, all of the powers vested in villages under chapter 61 of the statutes relating to the power of villages to finance, assess, build, construct and maintain sewerage systems, mains, laterals, drains and all appurtenances, and all of the duties by such provision imposed upon the village boards or villages, their

and on the 28th day of October, 1921, for the purpose of determining the boundaries of said drainage area and of establishing the boundaries of said Metropolitan sewerage district, adopted a resolution, a copy of which is annexed to the answer of the defendant *Metropolitan Sewerage Commission,* and adopted and approved the map referred to in said resolution as showing the said drainage area, which map was received in evidence and marked Exhibit 15.

"3. That with the exception of a narrow strip of land varying in width from a few rods to about a quarter of a mile, along the east side of the city of Milwaukee, bordering on Lake Michigan, both to the north and to the south of the mouth of the Milwaukee river, where the natural slope of the land is towards the lake, all the balance of said city of Milwaukee is located within the *natural water-shed* of the *Milwaukee river* and its *tributaries,* the two principal tributaries being the Menominee river and the Kinnickinnic river; and that said Milwaukee river empties into Lake Michigan in said city of Milwaukee near a piece of land called Jones Island, on which island the said disposal plant is located.

"4. That except as hereinafter stated, all of the territory included within the boundaries of said Metropolitan sewerage district lies within the *natural water-shed* of said Milwaukee river and its tributaries, the exceptions being as follows:

"(a) A narrow strip of land bordering on Lake Michigan and extending from the north line to the south line of said Metropolitan sewerage district.

"(b) Several irregular pieces of land, each varying in area from a few acres to about eighty acres, and extending along the southern boundary line of said Metropolitan sewerage district through the towns of Greenfield and Lake,

several committees and village clerk, shall be performed in such towns by the town boards and town clerks thereof; and all notices and specifications required thereby may be made and given by the towns in such work where no newspaper is published therein by posting five copies thereof in five public places in said town, and all duties by such provision imposed upon village clerk and village treasurer in extending upon the tax roll and collecting all assessments and taxes relating to such improvements, shall be performed in the same manner by town clerks and town treasurers of such towns."

where the line of the sewerage district so adopted, by following section lines and quarter-section lines, *follows as closely as practicable* but intersects at several places the line of the divide of the water-shed between the waters of the tributaries of the Milwaukee river to the north and Root river and Oak creek to the south, which streams to the south empty into the said lake south of the south line of said sewerage district.

"(c) A portion of sections 32, 33, and 34 of the town of Lake, where the surface water now is, and for several years last past has been, carried to the south into Oak creek by means, in part, of artificial drains, and in part through land which originally was swampy and where the natural condition of the land was such that the water, by means of similar drains, on substantially the same elevation, *could be carried* to the north and discharged into a tributary of the Kinnickinnic river.

"5. That the sewage from all the land included within said Metropolitan sewerage district may be cared for by said disposal plant in said city of Milwaukee, and all of such lands so included in said sewerage district are within the same drainage area for sewerage drainage purposes as the sewerage system of said city of Milwaukee; that the sewage disposal plant of the city of Milwaukee, including its intercepting sewerage system, when completed as designed and connected with the intercepting sewers to be constructed outside of said city of Milwaukee by the *Metropolitan Sewerage Commission,* will be of sufficient size, capacity, and design to properly and efficiently care for all of the present and prospective future sewage of said Metropolitan sewerage district.

"6. That the water supplying the waterworks system of the city of Milwaukee is taken from Lake Michigan, and one of the principal purposes of installing said sewage disposal plant is to prevent the water supply of said city becoming contaminated by the discharge of sewage from said city and surrounding territory into said lake, which would otherwise occur from sewage being discharged into said lake from the mouth of the Milwaukee river, and also from sewage discharged directly into the lake at other points along the lake shore, both within and beyond the boundaries of the city of Milwaukee; that the portions of

the Metropolitan sewerage district not within the natural water-shed of the Milwaukee river and its tributaries are substantially all similarly situated for drainage purposes, and within the same general drainage area as that portion of the city of Milwaukee constituting the narrow strip of land on the easterly side of said city bordering on Lake Michigan, and described in finding No. 3.

"7. That the lands of plaintiffs described in the complaint are within the boundaries of said Metropolitan sewerage district, are within the water-shed of the Milwaukee river and its tributaries, and are within the same drainage area as the sewerage system of the city of Milwaukee.

"8. That within the boundaries of said Metropolitan sewerage district, both within and outside of the limits of incorporated villages and cities outside of the city of Milwaukee, are located a large number of factories, industrial plants, and public and private buildings which produce and create a large amount of house and factory sewage, which is now being discharged into the Milwaukee river and its tributaries, and which is intended to be cared for and handled by the intercepting sewers to be constructed by the said *Metropolitan Sewerage Commission.*

"9. That portions of the territory within the boundaries of the Metropolitan sewerage district, including most of the territory in the northerly half of the town of Milwaukee, most of the territory in the town of Granville, and considerable of the territory in the towns of Wauwatosa, Greenfield, and Lake, at present consists largely of farming communities, with no large factories, and where there is at present no need of intercepting sewers; but said *Metropolitan Sewerage Commission,* when including said territory within the boundaries of the Metropolitan sewerage district, considered the past, present, and prospective future growth and development of the cities, villages, and industries in said sewerage district and considered the necessity of planning and constructing a system of intercepting sewers which would be reasonably sufficient in size and capacity to care for and handle the present and prospective needs of said district, and in doing so, and in fixing the boundaries of said sewerage district, it and its members exercised their best judgment and acted in good faith.

"10. That proceedings were taken in the manner provided by the state constitution and statutes, including ch. 554 of the Laws of 1921, for the issuing of county bonds in the sum of $1,300,000 for the use of the *Metropolitan Sewerage Commission,* and for the issuing of county bonds in the sum of $3,000,000 for the use of the *Milwaukee Sewerage Commission,* all of which bonds are to be dated April 1, 1922, ten per cent. of the principal of the bonds to be payable each year from April 1, 1933, to April 1, 1942, inclusive, the bonds to bear interest at the rate of five per cent. per annum, payable semi-annually on the first days of October and April in each year, after date, until paid; that for such purpose the several resolutions relating to that subject, copies of which are annexed to the plaintiffs' complaint and the answer of the *Milwaukee Sewerage Commission,* and certain other resolutions, were duly adopted, including certain resolutions adopted by the county board of Milwaukee county, on December 13, 1921, which levied a direct annual tax on all the taxable property in said Metropolitan sewerage district sufficient to pay the principal and interest on said bonds as they become due and payable; that pursuant to said resolutions there was included in the 1921 tax roll of each city, village, and town, in whole or in part, within the boundaries of said Metropolitan sewerage district, a tax against the taxable property in said Metropolitan sewerage district sufficient to pay the interest on said bonds which will become due and payable on October 1, 1922.

"As conclusions of law I find:

"1. That the provisions of ch. 554 of the Laws of Wisconsin for the year 1921, when construed as a whole, are reasonably susceptible to a construction not in conflict with any of the provisions of the state constitution, and that said statute is therefore so construed and its validity hereby sustained as a general statute of the state.

"2. That in the passage of the several resolutions and in the proceedings taken as found in the findings of fact, including the determination of the boundaries of the Metropolitan sewerage district, the resolutions providing for the issuing of bonds, the levying of taxes, and the extension of

a portion thereof which is payable in the taxes of 1921 upon the tax rolls, all such acts and proceedings are valid and were done and performed in the manner provided by law.

"3. That the defendants are entitled to judgment dismissing the plaintiffs' complaint, with costs to be taxed and recovered jointly in favor of such of the defendants as have appeared and answered, and such judgment is hereby ordered to be entered."

From the judgment entered in accordance with the findings the plaintiffs appeal. Such other material facts as are necessary to a proper understanding of the questions raised on this appeal will be stated in the opinion.

For the appellants there was a brief by *Gilbert J. Davelaar,* attorney, and *Herbert Piper, C. R. Dineen,* and *Churchill, Bennett & Churchill,* of counsel, all of Milwaukee, and oral argument by *Mr. Davelaar, Mr. Piper,* and *Mr. Dineen.*

For the respondents there was a brief by *John M. Niven,* city attorney, *Charles W. Babcock,* assistant city attorney, *W. L. Tibbs, J. G. Hardgrove, Albert B. Houghton, Charles Hammersley, Joseph E. Tierney, George H. Dutcher, Martin Schottler, George P. Miller,* and *Charles B. Perry,* all of Milwaukee; and the cause was argued orally by *Mr. Perry, Mr. Tibbs, Mr. Babcock,* and *Mr. Hardgrove.*

A brief was also filed by *Winfred C. Zabel,* district attorney of Milwaukee county, *Daniel W. Sullivan,* assistant district attorney, and *William L. Tibbs,* special assistant district attorney, attorneys for respondents *McCarty* and *Cary.*

ROSENBERRY, J. The plaintiffs are residents, electors, property owners, and taxpayers, residing in the town of Greenfield, Milwaukee county, and within the limits of the proposed Metropolitan sewerage district, and bring the action in their own behalf and in behalf of all other property owners and taxpayers of Milwaukee county similarly situated.

The first contention made on behalf of plaintiffs is that by the language of sub. 5 of sec. 1 of ch. 554, Laws 1921, reference is made to maps and surveys then in existence; that the maps and surveys referred to in the second finding of fact were prepared at the direction of the *Milwaukee Sewerage Commission* at a time subsequent to the passage and publication of ch. 554, and the action of the *Metropolitan Sewerage Commission* was not in compliance with the act. There is nothing in the language of the act itself indicating that reference was had by the legislature to any existing maps or surveys. How could a map or survey be prepared which would form the basis of action by the *Metropolitan Sewerage Commission* in fixing and establishing boundaries of the proposed sewerage district unless and until the legislature had specified in general terms at least what territory should be included therein? The area to be embraced within the proposed district was "the portion of said county which is within the same drainage area as the sewerage system of such city of the first class, the sewage from which may be cared for by the disposal plant located in such city of the first class." Manifestly, it was intended to include within the proposed district territory other than that within the natural drainage area within which the sewerage system of the city of Milwaukee was situated, and to include therein such additional territory as might be cared for by the sewage disposal plant located in the city of Milwaukee. So whether the maps and surveys submitted to the *Metropolitan Sewerage Commission* by the *Sewerage Commission* of the city of Milwaukee were made before or after the enactment of ch. 554 is immaterial, if they in fact did show the portion of the county which was within the same drainage area as the sewerage system of the city of Milwaukee, the sewage from which might be cared for by the disposal plant of the city of Milwaukee.

The trial court found that a portion of the territory

within the boundaries of the Metropolitan sewerage district at the present time consists largely of farming communities, with no large factories, and that there is at the present time no need of intercepting sewers. It is argued that the territory referred to in such finding will therefore receive no benefit from the construction of the proposed improvement and therefore no tax can be legally imposed upon it, citing *State ex rel. Owen v. Donald,* 160 Wis. 21 (151 N. W. 331), at p. 125. We do not think the conclusion reached by counsel necessarily follows from the facts stated in the finding. It is conceded that the territory in question is suburban in character. The court found that the *Metropolitan Sewerage Commission* considered the past, present, and prospective future growth and development of the cities, villages, and industries in the sewerage district and considered the necessity of planning and constructing a system of intercepting sewers which would be reasonably sufficient in size and capacity to care for and handle the prospective needs of the district, and that in so doing the *Commission* exercised their best judgment and acted in good faith. How can it be said that no benefit accrued to the property owners in the territory to be served by the proposed sewerage system? It may well be that the benefits will be more immediate and direct in some cases than in others. It is plain that to construct a system which would be sufficient to provide for present needs only would be little short of folly. When the great intercepting sewers are once constructed their capacity cannot be enlarged excepting by rebuilding them at enormous expense or paralleling them with a second system. The legislature required that provision be made so that as additional use develops by reason of the extension of manufacturing districts or increasing density of population, it may be provided for at a minimum of public expense. Looking at the matter in the light of experience and taking into consideration the reasonable probabilities of the future, it must be said that

the property embraced in the sewerage district receives a
present benefit which fully justifies the exercise of the tax-
ing power in this case.   That matters of this kind should
be dealt with in a large, comprehensive way, rather than
in detail and piecemeal as the imperative necessity arises,
seems apparent on a moment's consideration.

By the fourth finding the trial court determined that all
of the territory within the boundaries of the Metropolitan
sewerage district as established by the *Commission* lies
within the natural water-shed of the Milwaukee river. and
its tributaries except certain districts referred to in sub.
(a), (b), and (c) of the fourth finding.   It appears from
the evidence that in these instances certain territory is in-
cluded, the sewage from which would be carried to the
sewage disposal plant of the city of Milwaukee, although
not within the natural drainage basin.   In determining
what the boundaries of the sewerage district should be,
the *Metropolitan Sewerage Commission* proceeded in the
exercise of a power clearly conferred upon them by ch. 554.
We are in effect asked to review the finding of the trial
court and to a certain extent the determination of the *Met-
ropolitan Sewerage Commission* and to substitute our judg-
ment for that of the *Commission* as to the location of the
boundary line of the district.   It must be borne in mind
that in fixing the boundaries of the district wherever fixed,
there would be property upon one side of the line which
was erroneously placed.   If the line were placed too close
to the populous centers, territory would be excluded from
the district which clearly belonged within it.   If placed too
far from the densely populated regions, territory would
be included which perhaps, strictly speaking, did not belong
in a sewerage district.   The boundary line must be estab-
lished somewhere, and for its establishment there must
be some competent authority.   The legislature in a gen-
eral way fixed the boundaries of the district as before
stated.   The *Sewerage Commission,* as appears by the maps

and surveys in evidence, substantially complied with the legislative mandate. In some instances in following quarter-section lines so as to provide a workable scheme for the levying of the tax provided for in ch. 554, parts of quarter-sections were included which are not, strictly speaking, within the designated area. Other parts of quarter-sections were excluded which may, strictly speaking, be within the designated area. The *Metropolitan Sewerage Commission* evidently followed with as much fidelity as is reasonably possible the legislative command in establishing the boundaries of the district, and unless there is a substantial departure from the legislative scheme we see no grounds upon which this court can or should interfere with that determination. The problem presented to the *Metropolitan Sewerage Commission* was one of engineering, and their determination is in the last analysis a determination of fact, and where there has been a substantial compliance with the legislative command no question of law is presented.

In the territory referred to in sub. (a) of the fourth finding, it may well be that trenches to a considerable depth will have to be dug in order to throw the sewage from the strip of land there referred to into the system which will be served by the sewage disposal system of the city of Milwaukee. If that is not done, however, sewage will find its way into Lake Michigan and the whole object and purpose of the entire scheme might thereby be defeated, viz. to secure for the city of Milwaukee and its environs as pure a water supply as possible.

Ch. 554 is assailed as unconstitutional on the ground that it violates sub. 7, sec. 31, art. IV, Const., which provides:

"The legislature is prohibited from enacting any special or private laws in the following cases: . . . 7th. For granting corporate powers or privileges, except to cities."

The law is said to be special because by its terms it can

only apply to the county of Milwaukee for the reason that the county of Milwaukee is the only county within the state of Wisconsin in which there is situated a city of the first class and because of the other qualifications enumerated in sub. (1), sec. 1, ch. 554. This raises a question which has often been considered by this court, and that is whether or not a law which in fact can apply but to one county is a general or a special law. Every proposition urged for our consideration here was urged and fully answered in *Bingham v. Milwaukee Co.* 127 Wis. 344, 106 N. W. 1071. See, also, *State ex rel. Busacker v. Groth,* 132 Wis. 283, 112 N. W. 431.

While the basis of classification in ch. 554 is not that of population, a moment's examination discloses the fact that it is not a closed class; that as soon as there is any other county in which there is a city of the first class which has made provision for the sewage disposal plant as provided, the class will open and ch. 554 will by its terms become applicable to any county containing a city of the first class which has complied with the terms of sub. (1), sec. 1, ch. 554. Whatever may be said for or against a classification which permits the enactment of legislation which in fact at the time of its adoption applies and in all human probability for some considerable time in the future can never apply to any but a single county within the state, it is a matter which is no longer an open question in this state. The act being by its terms general, it is not within the provisions of sub. 7, sec. 31, art. IV, Const. Whether or not under the principle laid down in *State ex rel. Baltzell v. Stewart,* 74 Wis. 620, 43 N. W. 947, and *Muskego v. Drainage Comm'rs,* 78 Wis. 40, 47 N. W. 11, the legislature may, for the purpose of promoting the public health, enact a constitutional law creating a district embracing within its limits territory lying in more than one county, having some corporate powers, is a question not before us in this case.

It is next urged that ch. 554 contravenes sec. 22, art. IV, Const.:

"The legislature may confer upon the boards of supervisors of the several counties of the state such powers of a local, legislative and administrative character as they shall from time to time prescribe."

And sec. 23, art. IV:

"The legislature shall establish but one system of town and county government, which shall be as nearly uniform as practicable."

In support of this proposition are cited *State ex rel. Keenan v. Milwaukee Co.* 25 Wis. 339; *State ex rel. La Valle v. Sauk Co.* 62 Wis. 376, 22 N. W. 572; *McRae v. Hogan,* 39 Wis. 529; *Wagner v. Milwaukee Co.* 112 Wis. 601, 88 N. W. 577.

In *State ex rel. Keenan v. Milwaukee Co.,* ch. 372, P. & L. Laws 1869, was under consideration. By that chapter three commissioners were appointed to superintend the erection of a courthouse in the county of Milwaukee, a matter which was committed by general law to the county board of Milwaukee county. It was held that ch. 372 was void because in conflict with that provision of the constitution which requires but one system of town and county government shall be established, which shall be as nearly uniform as practicable. We do not see that that case has any applicability whatever to the questions presented here.

Our attention is called to no provision of the law conferring upon county boards the power to erect and maintain a sewerage system, and we find none. Upon what basis, then, can it be argued that ch. 554 violates sec. 23, art. IV, Const., which requires uniformity of town and county government?

In *State ex rel. La Valle v. Sauk Co., supra,* ch. 315, Laws 1881, was held unconstitutional, it being an act relating to county aid in the construction of bridges, because it provided

that the act should not apply to the county of Grant, a clear violation of the constitutional provision.

In *McRae v. Hogan, supra,* it was held that ch. 458, P. & L. Laws 1869, was invalid because it attempted to take from the possession and control of the town officers of Chippewa county a portion of the moneys raised in the towns for highway purposes and intrusted its expenditure to the county board. The law applied to no county in the state except Chippewa, and it was held that it violated the provisions of sec. 23.

In *Wagner v. Milwaukee Co., supra,* ch. 310, Laws 1899, which authorized the board of supervisors of any county to construct a viaduct, etc., provided such viaduct shall not be less than 1,000 feet long, 60 feet wide and 18 feet high and cost not less than $80,000, and the amount of bonds issued therefor shall not exceed one fifth of one per cent. of the taxable property of the county, it was held that this act attempted to give to the county of Milwaukee powers of local government not enjoyed by any other county of the state and hence was repugnant to sec. 23.

Ch. 554 attempts to confer no powers upon the county board of Milwaukee county. The Metropolitan sewerage district is at least a *quasi*-municipal corporation organized for the purpose of promoting the public health, the officers of which are chosen in the manner designated by the act. All the powers to be exercised in the organization, construction, and maintenance of the district are to be exercised by the *Metropolitan Sewerage Commission.* The county officers of the county of Milwaukee and the town, city, and village officers of the various towns, cities, and villages in the county of Milwaukee are not given additional powers by the terms of the act. By the terms of the act, when certain things are done by the *Metropolitan Sewerage Commission* the various county, city, town, and village officers are required to do certain things, as to the doing of which they have no discretion, as for instance the matter of the issuing

of the bonds, certification of taxes, the collection and disbursement of funds are provided for, not in the discretion of the governing bodies of the various municipalities but by the legislature itself by the express terms of the law.    The act, therefore, is not in contravention of the principles laid down in *State ex rel. Carey v. Ballard,* 158 Wis. 251, 148 N. W. 1090.    In that case, sub. 3, sec. 1317*m*—4, Stats. 1913, was under consideration.    By the terms of that act a town board was required to levy a highway tax whenever "any group of freeholders in the county desiring the improvement of a portion of the system of prospective state highways lying within that town" should present a petition for such improvement and comply with certain conditions therein specified.    This was held unconstitutional and void because it attempted to delegate legislative power to levy a tax to a group of freeholders in their individual capacity.    Manifestly, under the terms of ch. 554 no such power is conferred upon any body of persons individual or corporate.    By the provisions of sub. 6, sec. 1, ch. 554, the *Metropolitan Sewerage Commission* is required to project, plan, construct, and maintain first-class main sewers.    The *Commission* itself does not determine whether or not this shall be done.    The legislature has determined it for them and has committed the execution of the legislative plan to the *Metropolitan Sewerage Commission.*    Whenever the *Commission* requires funds for carrying out the legislative plan, the method by which said funds are provided is specified in sub. 7, to which reference is made.    The amount which the *Metropolitan Sewerage Commission* is authorized to certify is that amount which is necessary to carry out the legislative scheme.    The taxing power of the state is exerted through the *Metropolitan Sewerage Commission* and the various governing bodies and officers of the various municipalities by the legislature, and the funds raised in the manner specified can be disbursed for the purposes specified in the act and no other.    The powers exercised by the *Metropolitan Sewerage Commis-*

*sion* under the provisions of ch. 554 are in a general way analogous to those exercised by the officers of a school district or by the commissioners of the various drainage districts organized under the general law, being in most respects much narrower and more closely limited than are the powers either of the school boards or the drainage commissioners.

The act does not offend the constitution in the particulars referred to, as appears from prior decisions of this .court. *Sutter v. Milwaukee Board of Fire Underwriters,* 161 Wis. 615, 155 N. W. 127; *Borgnis v. Falk Co.* 147 Wis. 327, 133 N. W. 209; *State v. Lange C. Co.* 164 Wis. 228, 157 N. W. 777, 160 N. W. 57; *Rattlesnake D. Dist. v. Koshkonong Mud Creek D. Dist.* 150 Wis. 223, 136 N. W. 631; *Rinder v. Madison,* 163 Wis. 525, 158 N. W. 302; *Stone v. Little Yellow D. Dist.* 118 Wis. 388, 95 N. W. 405. See, also, *Houck v. Little River D. Dist.* 239 U. S. 254, 36 Sup. Ct. 58; *Wilson v. Board of Trustees, etc.* 133 Ill. 443, 27 N. E. 203; *People ex rel. Longenecker v. Nelson,* 133 Ill. 565, 27 N. E. 217.

It is also urged that ch. 554 violates sec. 1 of art. VIII of the constitution, which provides that taxation shall be uniform and taxes levied upon such property as the legislature shall prescribe.

*Donnelly v. Decker,* 58 Wis. 461, 17 N. W. 389, is cited, and it is argued in support of the proposition that, the tax provided for by ch. 554 being a general tax, the entire county and every subdivision therein is justly liable to bear its proportion of such tax; that inasmuch as by the terms of ch. 554 the tax is to be levied only upon the property in the Metropolitan sewerage district, the rule of uniformity is violated. *Donnelly v. Decker* holds that an improvement which will conduce to the public health or welfare may be made at the expense of the property which will be directly benefited thereby. That case had to do with the draining of marsh, swamp, and overflowed lands and

controverts rather than supports plaintiffs' position in this case. The legislature in this case has merely created an overlying taxing district and has directed that the funds necessary for the construction of the designated improvements shall be raised by taxation of the property directly benefited thereby. This it may constitutionally do. *State ex rel. Baraboo v. Sauk Co.* 70 Wis. 485, 36 N. W. 396; *Rude v. St. Marie,* 121 Wis. 634, 99 N. W. 460; *Milwaukee Co. v. Halsey,* 149 Wis. 82, 136 N. W. 139; *Dickson v. Racine,* 61 Wis. 545, 21 N. W. 620; *Bryant v. Robbins,* 70 Wis. 258, 35 N. W. 545.

In this case the legislature in a general way, by the provisions of ch. 554, established the boundaries of the Metropolitan sewerage district, which boundaries were made definite and certain by the act of the *Metropolitan Sewerage Commission,* in the exercise of a power conferred upon them by the terms of the act. The legislature directed that the *Metropolitan Sewerage Commission* do certain things with reference to the construction and maintenance of the Metropolitan sewerage system and that the funds with which such system should be constructed and maintained should be provided in the way therein designated. The act therefore established the boundaries of the taxing district, directed what moneys should be raised by taxation, and left to the *Commission* and the various taxing officers merely the ministerial duty of determining the necessary amounts and providing therefor on the tax roll. In so doing it is clear there was not an unconstitutional delegation of either legislative or taxing power. *Bryant v. Robbins,* 70 Wis. 258, 35 N. W. 545; *Dickson v. Racine,* 61 Wis. 545, 21 N. W. 620.

By the enactment of ch. 554 the state, through the legislature, has exercised for the promotion of the public health and general welfare the broadest as well as the most indefinite of all its powers, the police power. With the wisdom of the act or the matters of public policy involved or the choice of methods by which the legislative purpose is to be effected,

the court has nothing to do unless the act clearly contravenes some constitutional provision.

We have carefully examined the several grounds urged and have given the case the consideration which its importance warrants and have stated rather briefly our conclusion, and have not discussed as fully some questions involved directly and collaterally as we should wish to do were there more time. It appears that large public interests await the determination of the issues in this case. We have concluded, therefore, to announce the decision as promptly as possible. The questions involved have been discussed in the cases referred to, so that under the circumstances further elaboration is not required.

The *Metropolitan Sewerage Commission* proceeded in the manner specified in the act to determine the boundaries of the district, and its determination in that respect cannot be disturbed. Ch. 554 is a constitutional exercise of legislative power and the act well within the field of legislative discretion. The findings of the trial court both as to matters of fact and conclusions of law are amply sustained, and the judgment must be affirmed.

*By the Court.*—It is so ordered.