STATE of Wisconsin EX REL. Bronson C. LA FOLLETTE and the Metropolitan Sewerage Commission of the County of Milwaukee and Sewerage Commission of the City of Milwaukee, for and on behalf of the Metropolitan Sewerage District of the County of Milwaukee, Petitioners-Respondents,†

v.

BOARD OF SUPERVISORS OF MILWAUKEE COUNTY: F. Thomas Ament, as County Board Chairman and Supervisor of the 16th District; Bernice K. Rose, Supervisor of the 1st District; William E. Meaux, Supervisor of the 2nd District; Penny E. Podell, Supervisor of the 3rd District; Harout O. Sanasarian, Supervisor of the 4th District; Paul F. Mathews, Supervisor of the 5th District; Robert L. Jackson, Jr., Supervisor of the 6th District; Terrance L. Pitts, Supervisor of the 7th District; Gerald D. Engel, Supervisor of

the 8th District; James A. Krivitz, Supervisor of the 9th District; Paul A. Henningsen, Supervisor of the 10th District; John J. Valenti, Supervisor of the 11th District; Bernadette Skibinski, Supervisor of the 12th District; Dorothy K. Dean, Supervisor of the 13th District; Richard D. Nyklewicz, Jr., Supervisor of the 14th District; James Koconis, Supervisor of the 15th District; Daniel Cupertino, Jr., Supervisor of the 17th District; Fred N. Tabak, Supervisor of the 18th District; John D. St. John, Supervisor of the 19th District; Richard H. Bussler, Supervisor of the 20th District; James J. Lynn, Supervisor of the 21st District; Joseph M. Hutsteiner, Supervisor of the 22nd District; James R. Ryan, Supervisor of the 23rd District; Thomas R. Kujawa, Supervisor of the 24th District; and Thomas A. Bailey, Supervisor of the 25th District; and Thomas E. Zablocki, County Clerk of the County of Milwaukee, and William F. O'Donnell, County Executive of the County of Milwaukee, Appellants. [Case No. 81–1119.]

STATE of Wisconsin EX REL. Bronson C. LA FOLLETTE, and The Metropolitan Sewerage Commission of the County of Milwaukee and Sewerage Commission of the City of Milwaukee, for and on behalf of the Metropolitan Sewerage District of the County of Milwaukee, Petitioners-Respondents,

v.

William F. O'DONNELL, County Executive of the County of Milwaukee, Appellants,

BOARD OF SUPERVISORS OF MILWAUKEE COUNTY: F. Thomas Ament, as County Board Chairman and Supervisor of the 16th District; Bernice K. Rose, Supervisor of the 1st District; William E. Meaux, Supervisor of the 2nd District; Penny E. Podell, Supervisor of

the 3rd District; Harout O. Sanasarian, Supervisor of the 4th District; Paul F. Mathews, Supervisor of 5th District; Robert L. Jackson, Jr., Supervisor of the 6th District; Terrance L. Pitts, Supervisor of the 7th District; Gerald D. Engel, Supervisor of the 8th District; James A. Krivitz, Supervisor of the 9th District; Paul A. Henningsen, Supervisor of the 10th District; John J. Valenti, Supervisor of the 11th District; Bernadette Skibinski, Supervisor of the 12th District; Dorothy K. Dean, Supervisor of the 13th District; Richard D. Nyklewicz, Jr., Supervisor of the 14th District; James Koconis, Supervisor of the 15th District; Daniel Cupertino, Jr., Supervisor of the 17th District; Fred N. Tabak, Supervisor of the 18th District; John D. St. John, Supervisor of the 19th District; Richard H. Bussler, Supervisor of the 20th District; James J. Lynn, Supervisor of the 21st District; Joseph M. Hutsteiner, Supervisor of the 22nd District; James R. Ryan, Supervisor of the 23rd District; Thomas R. Kujawa, Supervisor of the 24th District; and Thomas A. Bailey, Supervisor of the 25th District; Co-Appellants,

Thomas E. ZABLOCKI, County Clerk of the County of Milwaukee, Trial Court Respondent. [Case No. 81–1805.]

### Court of Appeals

*Nos. 81–1119, 81–1805. Oral Argument October 20, 1982.—*
*Decided November 10, 1982.*
(Also reported in 327 N.W.2d 161.)

† Petition to review denied.

For the appellants County Board of Supervisors, et al., the cause was submitted on the briefs of *Robert G. Polasek,* corporation counsel, and *George E. Rice,* deputy corporation counsel, with oral argument by *Mr. Rice.* For appellant O'Donnell the cause was submitted on the briefs of *Thomas W. St. John, John D. Finerty* and *Robert H. Friebert* of *Friebert & Finerty,* of Milwaukee, with oral argument by *Mr. St. John.*

For the respondents Metropolitan Sewerage Commission, et al., the cause was submitted on the brief of *Michael J. McCabe,* director of legal services, and *David S. Branch* and *James H. Peterson,* senior staff attorneys, with oral argument by *Mr. Branch.* For the respondent State of Wisconsin the cause was submitted on

the brief of *Bronson C. La Follette,* attorney general and *Diane Nicks,* assistant attorney general, with oral argument by *Ms. Nicks.*

Before Decker, C.J., Moser, P.J., and Wedemeyer, J.

DECKER, C.J.    County Executive William F. O'Donnell (county executive) and the Board of Supervisors of Milwaukee County (county board) appeal from a judgment and an order granting a writ of mandamus which found clear ministerial duties on the part of the county board and the county executive to, respectively, raise capital funds for the Milwaukee Metropolitan Sewerage District and to approve any board resolution to this end. We reverse and hold that the statutory obligation of the county board to provide financing to the district is subject to the constitutional grant of a veto power to the county executive. Here the board approved, by resolution, a means to finance the capital budget of the district. The county executive had the prerogative to veto the resolution. Mandamus, therefore, is inappropriate since the county board did its duty by initially passing the resolution, and the county executive had no duty to approve the resolution.

While numerous issues are raised on appeal by the various parties, we believe that a resolution of the issue of the extent of the county executive's veto power is dispositive of the entire appeal.

In 1979, the Sewerage Commission of the city of Milwaukee, and the Metropolitan Sewerage Commission of Milwaukee County, acting on behalf of the Metropolitan Sewerage District, adopted a 1980 capital budget pursuant to sec. 59.96 (6) (s), Stats.,[1] and requested Milwaukee county to fund its share of 1980 capital improvements.

---

[1] Subsection (6)(s), as well as various other subsections of sec. 59.96, Stats., was repealed by §§ 3, 6, ch. 282, Laws of 1981.

The county board, as obligated by sec. 59.96(7)(a) and (c), Stats., adopted an initial resolution authorizing the issuance and sale of bonds in the amount of $55,735,000 on May 20, 1980, and later approved the sale of the completed bond issue.

Because of the timing of the bids on the bonds, the county executive essentially had forty-eight hours in which to act upon the resolution. While he did not explicitly veto the resolution, the county executive's inaction resulted in the bond issue's demise.[2]

The supreme court rejected a petition for leave to commence an original action filed by the state and the city and county commissions. A petition for alternative writ of mandamus was then filed in Milwaukee county circuit court. A hearing was conducted on November 10, 1980, and a lengthy memorandum decision issued on December 23, 1980. A final order of March 10, 1981, directed that the county board provide funding in the amount of $55,735,000. A judgment dated August 13, 1981 found the county board and the court executive to have clear ministerial duties and ordered writs of mandamus to be issued.

Our standard of review in a mandamus action is that the order of the court will not be reversed except for abuse of discretion. *Menzl v. City of Milwaukee,* 32 Wis. 2d 266, 275, 145 N.W.2d 198, 203 (1966). It has been held to be an abuse of discretion for a court to compel action through mandamus when the duty is not clear and

[2] Section 23a, art. IV, Wisconsin Constitution, essentially gives the county executive six days in which to exercise his veto power. Although here the county executive did not explicitly exercise his veto, his keeping of the resolution beyond the forty-eight hours necessary for its survival acted as a veto of it. We see no need to distinguish between explicit and implicit vetoes; either would have equally effectively extinguished resolution. Upon this appeal, the county executive asserts the authority to veto the resolution and threatens to do so.

unequivocal and requires the exercise of discretion. *Morrissette v. DeZonia,* 63 Wis. 2d 429, 432, 217 N.W.2d 377, 379 (1974). Such is the case here. Although the trial court's decision was reasoned and detailed, we cannot agree with its conclusions about the extent of the county executive's veto power and must accordingly reverse.

Section 59.96(6) (s), Stats., requires sewerage commissions to adopt budgets and to submit them to the county board. Section 59.96(7) (a) and (c) requires that the county board shall provide for the amount so required by tax levy or by issuing corporate bonds or by a combination of the two.

The mandatory character of this latter provision has been delineated in the past. *State ex rel. Milwaukee Sewerage Commission v. Board of Supervisors,* 220 Wis. 670, 265 N.W. 848 (1936); *State ex rel. Milwaukee Sewerage Commission v. Board of Supervisors,* 211 Wis. 412, 248 N.W. 457 (1933); *Thielen v. Metropolitan Sewerage Commission,* 178 Wis. 34, 189 N.W. 484 (1922).[3] However, these cases are directed to the county board's duty, and all of them well predate the constitutional amendment concerning the county executive. They are, with respect to the county executive's veto power, inapposite.

In 1959, the legislature created sec. 59.031, Stats.,[4] which established the position of county executive. Subsections (5) and (6) gave the county executive broad veto powers over resolutions, ordinances and budget. Those provisions are identical to the corresponding subsections in the current statutes.

---

[3] While the statutory language involved in these older cases is at variance with the newer statute (*e.g.,* "such board of supervisors is required and directed to provide by resolution . . ." [1935 Wis. Stats.], as opposed to "[t]he board of supervisors shall provide for the amount . . ." [1979–80 Wis. Stats.]), we do not believe the emendation changes the mandatory character of the provision.

[4] Section 2, ch. 327, Laws of 1959,

In *State ex rel. Milwaukee County v. Boos,* 8 Wis. 2d 215, 223, 99 N.W.2d 139, 144 (1959), the county executive's veto powers in subsecs. (5) and (6) were held unconstitutional by our supreme court as violative of "the constitutional mandate requiring but one system of county government for the state." *Id.*

The Wisconsin Constitution was then amended. Article IV, sec. 23a was created in 1962 and amended in 1969. It reads:

Every resolution or ordinance passed by the county board in any county shall, before it becomes effective, be presented to the chief executive officer. If he approves, he shall sign it; if not, he shall return it with his objections, which objections shall be entered at large upon the journal and the board shall proceed to reconsider the matter. Appropriations may be approved in whole or in part by the chief executive officer and the part approved shall become law, and the part objected to shall be returned in the same manner as provided for in other resolutions or ordinances. If, after such reconsideration, two-thirds of the members-elect of the county board agree to pass the resolution or ordinance or the part of the resolution or ordinance objected to, it shall become effective on the date prescribed but not earlier than the date of passage following reconsideration. In all such cases, the votes of the members of the county board shall be determined by ayes and noes and the names of the members voting for or against the resolution or ordinance or the part thereof objected to shall be entered on the journal. If any resolution or ordinance is not returned by the chief executive officer to the county board at its first meeting occurring not less than 6 days, Sundays excepted, after it has been presented to him, it shall become effective unless the county board has recessed or adjourned for a period in excess of 60 days, in which case it shall not be effective without his approval.

Thus, the broad veto powers of the county executive, found unconstitutional as a statutory provision, were returned by a constitutional amendment. We are faced,

then, with conflicting provisions: the statutory power of a metropolitan sewerage commission to require a county board to provide funding versus the constitutional power of a county executive to veto any resolution or ordinance of a county board.

We begin our analysis by noting that we find none of the pertinent statutory or constitutional provisions ambiguous. Section 59.96(6)(s) and (7)(a) and (c), Stats., clearly require the county board to provide for the sewerage districts' funding by tax levies or bonds. Article IV, sec. 23a of the constitution and its statutory embodiment, sec. 59.031(6),[5] equally clearly grants the county executive veto power over any resolution or ordinance of the county board.

These conflicting provisions cannot be harmonized or reconciled without seriously vitiating the direct language of one or the other. The question before us, then, is "Which provision takes precedence?"

"The general rule upon the subject is that where there is a conflict between an act of the legislature and the constitution of the state, the statute must yield to the extent of the repugnancy, but no further." *Marsh v. Buck,* 313 U.S. 406, 408 n. 3 (1941). "[T]he constitution or a constitutional amendment is of the highest dignity and prevails over legislative acts and court rule to the contrary." *Kayden Industries v. Murphy,* 34 Wis. 2d 718, 733, 150 N.W.2d 447, 454 (1967). "Ordinary acts of the legislature, whether adopted before or after the date of the constitution, cannot be given effect if to do so would contravene a substantive provision in the constitution." 1A J. Sutherland, *Statutes and Statutory Construction* § 23.20, at 258 (C. Sands 4th ed. 1972).

---

[5] "The fact that a constitutional provision happens to be repeated in the statute does not alter its constitutional thrust." *Kayden Indus. v. Murphy,* 34 Wis. 2d 718, 733, 150 N.W.2d 447, 454 (1967).

We conclude, then, that mandamus does not lie against the county executive to prevent him from exercising a discretionary veto power granted by the constitution. Similarly, mandamus does not lie against the county board since it passed the necessary funding resolution.

One argument remains: that, after the county executive's veto power was exercised, the county board should, in this case, have been obliged to override the veto by a two-thirds' vote as is its prerogative under the constitutional amendment and sec. 59.031(6), Stats:

> If, after such reconsideration, two-thirds of the members-elect of the county board agree to pass the resolution or ordinance or the part of the resolution or ordinance objected to, it shall become effective on the date prescribed but not earlier than the date of passage following reconsideration. . . . .

We disagree for two reasons. First, to so oblige the county board to override under color of statute the county executive's constitutionally created veto power is repugnant to the discretionary quality of the veto power itself; that power becomes meaningless if, in particular instances, the county board is *obliged* to override it. Second, the constitutional grant of the county board's override power would itself be thwarted if the county board were required to exercise it in a particular instance. The language of art. IV, sec. 23a is conditional: "If, after such reconsideration, two-thirds of the members-elect of the county board agree to pass the resolution or ordinance . . . ." The override is contingent upon two-thirds of the county board agreeing upon the resolution or ordinance. Conversely, if less than two-thirds agree, there is no override. To force the county board to override a veto would be to transfer to the metropolitan sewerage commission on the strength of a statute the county board's constitutionally-based option to override.

The constitutionally-based power must take precedence over the statutorily-based power. Otherwise, the sewerage district would achieve indirectly what it cannot do directly. The county board's ministerial duty must fall to a constitutional power.

The trial court granted mandamus because of what it perceived as the absurd result of allowing the county executive's veto power to be greater than the power held by the county board. We disagree. First, a contrary conclusion would be no less absurd; a veto power that cannot be exercised is no power at all. Second, the power of the metropolitan sewerage commission to compel the county board to supply funding and the powers of the county board are statutory, but derivative of art. IV, sec. 22 of the Wisconsin Constitution as a valid delegation of authority to implement a legislatively adopted plan;[6] the veto powers of the county executive (as well as the county board's override option) are purely constitutional. Therefore, we believe that it is not strictly accurate to denominate those veto powers as negative only, or to limit them by the purview of the county board's powers.

The trial court concluded that the county executive's veto power applies only to those "legislative acts of the Board where the Board is in fact exercising its discretion . . . ." Again, there is no such limiting language in the constitutional amendment; that language is all-encompassing and must be taken on its face.

Our view of the county executive's veto power is not intrusive upon the legislature's exercise of its constitu-

---

[6] Wis. Const. art. IV, § 22, states:

The legislature may confer upon the boards of supervisors of the several counties of the state such powers of a local, legislative and administrative character as they shall from time to time prescribe.

See also *Thielen v. Metropolitan Sewerage Commission,* 178 Wis. 34, 54, 189 N.W. 484, 492 (1922).

tional authority. The use of the county board as a vehicle for funding the needs of the metropolitan sewerage commission hazards the risk of intervention by the use of the county executive's veto power. Other avenues of approach to financing the needs of the commission are available to the legislature which avoid such intervention.

We are not of the opinion that legislative delegation of power to the metropolitan sewerage district has been forever foiled. Chapter 282, Laws of 1981, repealed sec. 59.-96, Stats.,[7] and now provides funding methods which obviate the county executive's veto power.[8] This chapter does not, however, render the question before us moot.[9] Therefore, we reverse the writ of mandamus.

*By the Court.*—Judgment and order reversed.

---

[7] Sections 3, 4, 5, 6, ch. 282, Laws of 1981.

[8] *See* § 20, ch. 282, Laws of 1981.

[9] Chapter 282, Laws of 1981, as a whole, took effect on April 27, 1982; however, the repeal of sec. 59.96(7), Stats., takes effect on December 31, 1982. *See* § 48, ch. 282, Laws of 1981. Because past claims are in question before us, the issue remains alive.

The state moved this court to take judicial notice of an order dismissing with prejudice the case of *City of Franklin v. Metropolitan Sewage Commission*, No. 531–895 (Milw. Co. Cir. Ct. February 19, 1982). We ordered that this question would be resolved in this decision. Given our decision here, we determine that this question is moot. *See Ziemann v. Village of North Hudson*, 102 Wis. 2d 705, 712, 307 N.W.2d 236, 240 (1981).